DAVID ROSE *vs.* BOARD OF REVIEW IN THE DIVISION OF
INSURANCE & another.

Suffolk.    November 5, 1963. — January 3, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Medical Service Corporation. Insurance,* Reinsurance.  *Words,* "Subscriber."

A "group medical service agreement" between a medical service corporation and a university, duly filed with the Commissioner of Insurance, in which the university agreed to pay the corporation 108 percent of the amounts paid by the corporation to participating physicians for services rendered to covered employees of the university, and to which was attached a certificate setting forth the benefits available to such employees, was valid under G. L. c. 176B, § 4, as appearing in St. 1960, c. 307, § 1, although the university was ineligible to be a "subscriber" and the charges made by the university to its covered employees were not filed with the commissioner.  [583–585]

A contract of reinsurance was not effected by a "group medical service agreement" entered into by a medical service corporation and a university under G. L. c. 176B, § 4, as appearing in St. 1960, c. 307, § 1, whereby the university agreed to pay the corporation 108 percent of the amounts paid by the corporation to participating physicians for services rendered to covered employees of the university.  [586]

BILL IN EQUITY filed in the Superior Court on August 3, 1962.

The suit was heard and reported by *Spring,* J.

*Louis Goldstein* for the plaintiff.

*Edmund L. Twomey* for the defendant Massachusetts Medical Service (*David W. Hays,* Assistant Attorney General, for the defendant Board of Review in the Division of Insurance, with him).

KIRK, J.  The principal parties in interest to this litigation are two: the defendant Massachusetts Medical Service, Inc. (Blue Shield), a medical service corporation organized pursuant to the provisions of G. L. c. 176B, § 2, and the plaintiff, a participating physician, as defined in G. L. c. 176B, § 1, under contract with Blue Shield.  The de-

fendant Board of Review in the Division of Insurance (the board) became a party when the plaintiff, who had submitted his dispute with Blue Shield to the board under G. L. c. 176B, § 12, was aggrieved by its decision and sought a review in the Superior Court. The judge upheld the board whose decision was unanimous. It is agreed that we have before us all the evidence, almost entirely documentary, which is necessary for the determination of the case.

The immediate question for decision is whether, in the circumstances to be stated, the plaintiff, as ordered by the board, must return the sum of $109 paid to him by a patient whom he had attended in January and February, 1961. The plaintiff's bill for services was $300. Blue Shield paid him $191; the patient paid him the balance of $109. The patient was an employee of Harvard University (Harvard). Unknown to the plaintiff, Harvard had made an agreement with Blue Shield whereby Harvard agreed to pay monthly to Blue Shield 108% of the amounts paid by Blue Shield to participating physicians for services rendered to Harvard's covered employees.[1] The agreement was filed with the Division of Insurance of the Commonwealth on July 20, 1960, and was effective July 1, 1960. Annexed to the agreement and incorporated by reference in it was a "subscriber's certificate" which set out in meticulous detail the benefits, subject to certain definitions, limitations and exclusions, which are available from Blue Cross and Blue Shield to a "member" covered by the "contract." The "contract" is defined as "this Certificate, Riders, if any, the application card, and any Supplemental Agreements." A "member" means "each person eligible for benefits under a membership." "Subscriber" means "the

---

[1] Harvard's agreement, in a single document, was with both Blue Cross and Blue Shield. See G. L. c. 176A, § 5, par. 1, and c. 176B, § 3, par. 2. Harvard agreed to pay 105.5% of amounts paid by Blue Cross. It agreed to deposit $136,500, subject to adjustment on six months' notice, in the event of a change in number of employees or cost of service. This sum was to be used primarily to meet the obligations incurred by the corporations for services rendered to Harvard employees in the event the agreement was terminated. There were provisions for termination of the agreement by Harvard on the first day of any month if fifteen days' prior notice was given, and by the corporations on July 1, 1961, or any subsequent month by giving sixty days' notice to Harvard.

individual with whom Blue Cross-Blue Shield has entered into a contract.''

It is undisputed that the patient was, under the definition in the subscriber's certificate, a ''service benefit member,'' who, as such, was not required to make payments to participating physicians above the payments made by Blue Shield as provided in its schedule of fees.

Underlying the plaintiff's assertion that he is not required to remit $109 to the patient is the contention that the agreement between Blue Shield and Harvard is invalid because it does not comply with the provisions of G. L. c. 176B, § 4, as amended by St. 1960, c. 307, § 1, with the result, it is argued, that the plaintiff is not a participating physician as to the employees of Harvard. One of the grounds of invalidity asserted by the plaintiff is that, under the arrangement described, Harvard is a ''subscriber'' to Blue Shield but, under the statute, is in fact ineligible to be a ''subscriber.'' It is, of course, quite clear that by definition in G. L. c. 176B, § 1,[2] and in the context of the statute as a whole,[3] Harvard is not eligible to be a subscriber since the term contemplates a human being to whom and to whose eligible dependents the medical services or benefits are to be available. The definition of the word ''subscriber'' in the subscriber's certificate, above referred to, likewise repels the suggestion that Harvard is a ''subscriber'' to Blue Shield. The fact that Harvard cannot be a ''subscriber'' does not, however, in any way affect its capacity to make the described agreement with Blue Shield.

Agreements of the type entered into by Blue Shield and Harvard are recognized and expressly authorized by St. 1960, c. 307, § 1, enacted as an emergency measure,

[2] '' 'Subscriber,' a person who has subscribed to a non-profit medical service plan and to whom a subscription certificate has been issued in accordance with the provisions of section six.''

[3] Other sections of the statute which support the conclusion that a subscriber must be an individual are §§ 3 (''not less than one third of the directors shall be . . . subscribers . . . .''); 4 (''services . . . rendered . . . to the subscribers and to their dependents . . .''); 5, 7. See also, preamble St. 1941, c. 306, ''medical services at low cost to members of the public who become subscribers . . . .''

which substituted a new § 4 for that which had theretofore existed. The 1960 statute deals with and regulates two types of agreement by a medical service corporation, "a non-group medical service agreement" and "a group medical service agreement." We are concerned primarily with the latter type which the statute defines as: "Any agreement between a medical service corporation and a group of five or more persons or with the employer, employers or other representatives of such group whereby the medical service corporation undertakes to furnish benefits for medical service to said persons and to their covered dependents, if any . . .." The statute goes on to provide: "Under such a group medical service agreement, subscription certificates and the rates charged by the corporation [Blue Shield] to the subscribers shall be filed with the commissioner within thirty days after their effective date, and shall be subject to subsequent disapproval by the commissioner if he finds that the benefits provided therein are unreasonable in relation to the rate charged, or that the rates charged are excessive, inadequate or unfairly discriminatory."

The 1960 statute, in paragraph two of § 1, which deals with a nongroup agreement (an "agreement between a medical service corporation and a person"), requires that "the form of subscription certificate and the rates charged by such corporation to the subscribers shall be filed with and receive the prior approval of the commissioner." Section 2 of the same statute, in amendment of G. L. c. 176B, § 6,[4] requires that a subscription certificate be issued to each nongroup subscriber.

We think that these differences, relating to the regulation of group and nongroup agreements, in the 1960 statute, are significant in the determination of the question raised by the plaintiff.

The plaintiff argues that, although the rates charged by Blue Shield to Harvard, the employer, were set in the agree-

[4] General Laws c. 176B, § 6, originally read in the first sentence, "A subscription certificate shall be issued to each subscriber of a medical service corporation." It should be noted, however, that the definition of a subscriber in § 1 remains unchanged as to the second clause.

ment filed with the Commissioner, the charges made by Harvard to the employee-subscribers were not filed and that, in consequence, there has been a failure to comply with the statute. This argument, while plausible, is not convincing in view of what appears to be the dominant purpose of the statute, which we construe as an harmonious whole, giving to each word its ordinary meaning and considering no word as superfluous. G. L. (Ter. Ed.) c. 4, § 6. *Bolster* v. *Commissioner of Corps. & Taxn.* 319 Mass. 81, 84–85. *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 225. This purpose is to regulate the operations of a nonprofit medical service corporation rather than to regulate the operations of the employer who makes a group agreement with it. To accomplish this purpose, the statute requires, as to both types of agreement, that the rates charged by Blue Shield for the services rendered by its physicians to its subscribers be made known to the Commissioner. This requirement is met in the case of nongroup agreements by literal compliance with the statutory words "rates charged by such corporation to the subscribers shall be filed . . . ." In the case of group agreements, however, an insistence upon literal compliance with this statutory language would not meet this requirement since the rates charged to the subscriber do not include the contribution made on the employee's behalf by the employer to the corporation. The requirement is met, therefore, in the case of group agreements by the filing, as here, of the overall rates charged to the employer of the group. We accordingly hold that there has been adequate compliance with the statute by the filing of the rates charged by Blue Shield to Harvard, the employer of the subscribers.[5]

We agree with the conclusion of the board that the filing made with the Division of Insurance comes within the permissible classifications of risks based upon the actual expense, size, management, purpose and location, plus an

---

[5] Harvard distributed to its employees a booklet entitled "A Comprehensive Medical Plan" setting out, in nontechnical language, the benefits and other information regarding the plan and its cost to participants.

additional charge for the administration of the plan. We agree further that a rate may be a fixed charge, but that it may also be a charge the exact amount of which is not exactly determinable until sometime after the expiration of the coverage, which is the type of situation contemplated by the filing made here, and by the provisions of G. L. c. 176B, § 4, paragraph 5 as it now reads.[6]

The plaintiff's further contention that Harvard's agreement with Blue Shield is a contract of reinsurance, which Harvard is admittedly not authorized to make, is without substance. It is plain that the agreement is an undertaking by Harvard to reimburse Blue Shield for the amounts it pays out to participating physicians for services rendered to Harvard's employees and their eligible dependents plus a fee of eight per cent for overhead costs. This arrangement is far from a reinsurance agreement as that term is understood and defined (see *Friend Bros. Inc.* v. *Seaboard Surety Co.* 316 Mass. 639, 642) and is not forbidden by statute.

We think it unnecessary to consider other arguments advanced by the plaintiff. A decree may be entered that the agreement between Harvard and Blue Shield is valid; that the plaintiff as a participating physician is bound by the fee schedule in effect when his services were rendered to the patient in 1961; and that the plaintiff be ordered to return to the patient the overcharge of $109. Costs are awarded to Blue Shield.

*So ordered.*

---

[6] "Nothing in this section shall be construed to prohibit as unreasonable or unfairly discriminatory the establishment of classifications or modifications of classifications of risks based upon size, expense, management, individual experience, purpose, location or dispersion of hazard or any other reasonable considerations, or to prohibit retrospective refunds. Acquisition costs in connection with the solicitation of subscribers and costs of administration shall at all times be limited to such amounts as the commissioner shall approve."