ALCOHOLIC BEVERAGE SALES — PRICE AFFIRMATION LAW Any licensee who sells spirits to Oklahoma wholesalers must comply with the Oklahoma price affirmation law, 37 O.S. 536.1 [37-536.1] (1971). Absent any special statutory definition the words "price" and "rate" are accorded their normal and usual meaning and refer to the amount of money paid by Oklahoma wholesalers to their suppliers for spirits, exclusive of state tax. The Attorney General is in receipt of your opinion request wherein you ask, in effect, the following questions: 1. Which alcoholic beverage licensees must comply with the Oklahoma price affirmation law? 2. What is meant by the terms "price" and "rate" in the affirmation law? Title 37 O.S. 536.1 [37-536.1] (1971), commonly known as the Oklahoma Price Affirmation Law, provides: "Limitation on price of distillers' sales. "No distiller shall sell alcoholic beverages to a wholesaler li censed under the Alcoholic Beverage Control Act at a rate higher than the lowest rate at which such distiller sells in any other state." The purpose of this statute is to foster price competition among suppliers to Oklahoma wholesalers and to make any price discrimination or favoritism against Oklahoma wholesalers unlawful. The New York and Kansas affirmation laws have both been upheld despite strong constitutional attacks. Seagram v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336
(1966); Laird and Company v. Cheney, Kan., 414 P.2d 18
(1966). In 1971 the Oklahoma Legislature passed Section 536.1, the Oklahoma price affirmation law. Section 37 O.S. 536.1 [37-536.1] uses the word "distiller". The Alcoholic Beverage Control Act defines "distiller" at 37 O.S. 506 [37-506](9) (1971), as: " 'Distiller' means any person who produces spirits from any source or substance, or any person who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits (except a person making or using such material in the authorized production of wine or beer, or the production of vinegar by fermentation), or any person who by any process separates alcoholic spirits from any fermented substance, or any person who, making or keeping mash, wort, or wash, has also in his possession or use a still." (Emphasis added.) The definition of "distiller" indicates that it is limited to persons dealing in "spirits". Distiller does not pertain to wine or beer. "Spirits" are defined at 37 O.S. 506 [37-506](27) (1971), as: " 'Spirits' means any beverage other than wine or beer, which contains more than three and two-tenths per cent (3.2%) alcohol measured by weight and obtained by distillation, whether or not mixed with other substances in solution and includes those products known as whiskey, brandy, rum, gin, vodka, liqueurs, cordials and fortified wines and similar compounds; but shall not include any alcohol liquid completely denatured in accordance with the Acts of Congress and regulations pursuant thereto." However, 37 O.S. 524 [37-524] (1971), requires everyone who sells alcoholic beverages to Oklahoma wholesalers to hold a nonresident seller's license, not a distiller's license. As a matter of fact, the Alcoholic Beverage Control Board has only issued one distiller license since 1959. Parties who sell to Oklahoma wholesalers all hold nonresident seller's licenses. Limiting the coverage of Section 37 O.S. 536.1 [37-536.1] to only distillers, and not others in the marketing chain of spirits, renders the affirmation law totally useless. Under that limitation, the affirmation law may be circumvented by a simple strawman transaction, wherein a distiller sells alcoholic beverages to an agent and in turn the agent is free to sell to Oklahoma wholesalers without meeting affirmation because the agent is not a distiller. Such an obvious ploy was certainly not the intent of the legislature. It is well settled Oklahoma law that the legislature is never presumed to do a vain and useless act. Moral Insurance Company v. Cooksey, Okl.,285 P.2d 223 (1955). Nor may statutes be construed to obtain an absurd result. In re Kyle's Autopsy, Okl., 309 P.2d 1070
(1957); State v. Longmire, Okl., 281 P.2d 949
(1955). Two Oklahoma Statutes speak to the problem with Section 37 O.S. 536.1 [37-536.1]. They provide authority to obtain a different interpretation if a contrary intent plainly appears. Title 25 O.S. 1971 1 [25-1] and 2, provide in pertinent part: "1. Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears . . . . "2. Whenever the meaning of a word . . . is defined in any statute, such definition is applicable to the same word . . . wherever it occurs, except where a contrary intention plainly appears." (Emphasis added.) Pursuant to these statutes is a substantial body of Oklahoma case law holding that legislative use of inappropriate wording may not destroy the otherwise clearly expressed intention of the legislature. Dell v. United Farm Agency, Okl., 296 P.2d 149
(1956); Board of Education of City of Okmulgee v. State Board of Education, Okl., 200 P.2d 394 (1948). In this case the intention of the legislature in enacting Section 37 O.S. 536.1 [37-536.1] was to completely protect Oklahoma from discriminatory pricing on spirits. The word "distiller" was used in the section because the distiller is the beginning of the marketing process for spirits. However, limiting coverage of the statute to only distillers creates a vast loophole, renders the statute useless, and completely frustrates the legislative intent. Section 536.1 must be read to accomplish the legislative intent to require price affirmation from all alcoholic beverage licensees who sell spirits to Oklahoma wholesalers. The word "distiller" is used three times in Section 37 O.S. 536.1 [37-536.1]. Exclusive use of the word "distiller", as defined in Section 37 O.S. 506 [37-506](9), supra, manifests a legislative intent to require only distillers and others in the marketing process of spirits to meet price affirmation. Winemaker is defined at Section 37 O.S. 506 [37-506](30). Winemaker is not mentioned anywhere in Section 37 O.S. 536.1 [37-536.1]. By the same token, brewer is defined at Section 37 O.S. 506 [37-506](5) and is not mentioned anywhere in Section 37 O.S. 536.1 [37-536.1]. If the legislature had intended to require winemakers and other sellers in the wine-marketing process, or brewers and other sellers in the beer-marketing process, to meet price affirmation, the words winemaker and/or brewer would have appeared in Section 536.1. The absence of such words is a clear indication that only distillers and other sellers in the spirits-marketing process are mandated by 536.1 to meet an affirmed price. Regarding your second question, it must be noted that the title of Section 37 O.S. 536.1 [37-536.1] is "limitation on price of distillers' sales". The title of a statute is a valuable aid in interpreting the body of an act and in determining legislative intent. OGE v. Oklahoma Tax Commission, Okl., 58 P.2d 124 (1936), Board of Education v. Morely, Okl., 34 P.2d 258 (1934). The body of the statute uses the term "rate" instead of "price". Although use of different words in the title and body is not explained, the obvious intent of the affirmation law, as already stated, is to protect Oklahoma from discriminatorY and excessive prices for spirits in the state. As used herein the words are synonymous. It is well-settled law that the words "price" and "rate" refer to the same thing. "A rate charged for a public utility service or product is not a tax, but a price at which and for which the public utility service or product is sold." City of Niles v. Union Ice Corporation, Ohio,12 N.E.2d 483, 489 (1938). "'Rate' means price; value. 'Going rate' as to freight, like 'market price' for produce, means a fixed and established price for the time. Barrett v. The Wacousta, 2 Fed. Cas. 928, 929. " 'Rate' is defined by Webster to be the price or amount stated or fixed for anything." Raun v. Reynolds, 11 Cal. 14, 19. See also, Rose v. Board of Review, Mass., 195 N.E.2d 82 (1964), and Gould v. City of Lawrence, Mass., 35 N.E. 462 (1893). Absent any special statutory definition, the terms "price" and "rate" refer to simply the amount of money paid by an Oklahoma wholesaler to sellers for spirits, exclusive of Oklahoma tax. Under Section 37 O.S. 536.1 [37-536.1], the "price" or "rate" paid by an Oklahoma wholesaler to a supplier for spirits, exclusively of Oklahoma tax, may be no higher than the lowest price or rate at which the supplier sells in any other state. Oklahoma tax is not included in the F.O.B. price that must be affirmed because it is a charge imposed by the state. Tax is not imposed by the seller, nor is the amount of tax controlled or set by the seller. However, all handling, transportation, or miscellaneous charges of the seller must be included in the affirmed, F.O.B. price. Otherwise, allowing a seller to post an "affirmed" price, then separately add on miscellaneous and other charges, would force Oklahoma wholesalers to pay in the final analysis a price higher than the affirmed price for spirits, and would violate Section 536.1. Such an obvious subterfuge cannot be used to frustrate the intent of the Legislature. Affirmation laws are common in the United States. However, most other states' affirmation statutes include express language defining all factors that are included or excluded in determining the affirmed price. Oklahoma has no such statutory definition, therefore the words "price" and "rate" are accorded their normal and usual meaning. The Kansas affirmation statute, K.S.A. 41 4112, is similar to Oklahoma's in that the Kansas statute does not include all factors to be included in the affirmed price. In construing the Oklahoma statute, this opinion reaches the same result found by the Kansas Supreme Court when it construed the Kansas affirmation law, to-wit, absent statutory direction to the contrary, the affirmation law looks to the amount of money paid by wholesalers to their suppliers for spirits. In Laird Co. v. Cheney, supra, the Kansas Supreme Court stated the concept very succinctly: "The proviso so bitterly attacked simply means that such price shall be the amount actually realized by the seller on the transaction instead of an initial 'invoice price' which may or may not be the true price to the distributor." (Emphasis added.) It is, therefore, the opinion of the Attorney General that your question be answered as follows. Any licensee who sells spirits to Oklahoma wholesalers must comply with the Oklahoma price affirmation law, 37 O.S. 536.1 [37-536.1] (1971). Absent any special statutory definition, the words "price" and "rate" are accorded their normal and usual meaning and refer to the amount of money paid by Oklahoma wholesalers to their suppliers for spirits, exclusive of state tax. (Daniel J. Gamino)