NORMAN D. NELSON & others *vs.* BLUE SHIELD OF MASSACHUSETTS, INC.
(and a companion case).

Suffolk. February 8, 1979. — April 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Medical Service Corporation. Administrative Law*, Exhaustion of remedies. *Commissioner of Insurance*, Medical service corporation. *Consumer Protection Act*, Medical service corporation. *Jurisdiction*, Primary jurisdiction.

In a proceeding for declaratory relief by a medical association and individual doctors against a medical service corporation, claims challenging the terms of the standard Participating Physician's Agreement and attacking the approval by the Commissioner of Insurance of the 1977 Amended Schedule of Benefits were properly dismissed where the plaintiffs had failed to exhaust their administrative remedies under G. L. c. 176B, § 12. [751-752]

---

[4] The jury had returned the verdicts in such form that the amount awarded for this element of damages was identifiable.

In actions by two medical associations and individual doctors against a medical service corporation, common law claims for breach of contract and for fraud should have been dismissed where the plaintiffs failed to exhaust their administrative remedies under G. L. c. 176B, § 12. [752-753]

In actions by two medical associations and individual doctors, charging violations of G. L. c. 93A by a medical service corporation, the judge did not err in finding that c. 93A was not rendered inapplicable by reason of its overlap with c. 176D or in finding that the plaintiffs were required to seek the aid of the Commissioner of Insurance under c. 176D before filing suit under c. 93A; however, he erred in finding that the plaintiffs had in fact exhausted c. 176D on the basis of an affidavit which stated that the plaintiffs had announced to the Commissioner their intention to commence a class action and invited the Commissioner to seek similar relief under c. 176B, § 13, and a second affidavit expressing the opinion that resort to an administrative tribunal would be futile because of the bias of the Commissioner and his subordinates. [754-755]

Two civil actions, the first commenced in the Supreme Judicial Court for the county of Suffolk on June 14, 1977, and the second in the Superior Court on October 28, 1977.

Upon transfer of the first action to the Superior Court, the cases were consolidated and reported to the Appeals Court by *Hallisey*, J. The Supreme Judicial Court granted a request for direct review.

*Arnold Manthorne* (*Stanley V. Ragalevsky* with him) for Norman D. Nelson & others.

*Reginald H. Howe* (*Daniel O. Mahoney* with him) for Blue Shield of Massachusetts, Inc.

*Paul W. Johnson*, Assistant Attorney General, for the Commissioner of Insurance.

*James M. Walsh, Andrew Kisseloff & Anne M. Maguire*, for Massachusetts Federation of Physicians and Dentists, Inc., submitted a brief.

Braucher, J. The plaintiffs, medical associations and individual doctors, brought two class actions against Blue Shield of Massachusetts, Inc. (Blue Shield), the only "medical service corporation" operating under G. L. c. 176B, attacking the propriety of Blue Shield's current

methods of compensating its participating physicians. A judge of the Superior Court reported the cases to the Appeals Court, and we allowed an application by the plaintiffs in one of the cases for direct appellate review. We apply the doctrines of primary jurisdiction and exhaustion of administrative remedies, and hold that the complaints must be dismissed.

1. *The cases.* The first action, brought by the Massachusetts Federation of Physicians and Dentists, Inc. (Federation), and fifteen doctors constituting the board of governors of the Federation, began as an action in this court to appoint a receiver for Blue Shield under G. L. c. 176B, §§ 13, 17. The complaint was dismissed without prejudice by a single justice of this court, who transferred the case to the Superior Court. There the plaintiffs filed an amended complaint charging Blue Shield with four types of unfair or deceptive acts or practices in violation of G. L. c. 93A, §§ 2 and 11, and seeking damages and declaratory and injunctive relief.

The second action, brought by The Massachusetts Medical Society (Society) and four doctors, began in the Superior Court with a complaint containing eleven counts against Blue Shield and the Commissioner of Insurance (Commissioner). An amended complaint dropped the two counts against the Commissioner. The remaining nine counts alleged various breaches of the standard Participating Physician's Agreement (Agreement), attacked its validity, alleged "continuing fraud" and violations of G. L. c. 93A, and sought damages and declaratory and injunctive relief.

The two actions were consolidated, and the Commissioner was allowed to intervene as a defendant. The defendants moved to dismiss the complaints; the judge permitted the parties to file affidavits and considered the motions as motions for summary judgment. He dismissed the Federation and the Society as plaintiffs, and the plaintiffs have waived any objection to those rulings. He dismissed counts 3, 4, 5, 6 and 9 of the Society complaint.

He allowed the Federation complaint and counts 1, 2 and 8 of the Society complaint to stand except to the extent that they seek relief from the terms of the Agreement or attack the Commissioner's approval of the 1977 Amended Schedule of Benefits; he also allowed count 7 of the Society's complaint to stand. The Society plaintiffs have waived counts 3, 4 and 9 of their complaint.

2. *The allegations.* We summarize the allegations of the amended complaints. The Federation complaint charges that Blue Shield (1) misrepresents to the public that subscribers to Blue Shield may only seek medical services rendered by participating physicians, (2) misrepresents to the public that participating physicians cannot "balance bill," that is, bill for services more than the sum allowed by Blue Shield, (3) wrongfully discounts charges, and (4) misrepresents to subscribers that Blue Shield pays the physicians' bills in full.

The Society complaint begins with forty-four paragraphs which are incorporated in most of the later counts. Blue Shield and its sister organization, Blue Cross of Massachusetts, Inc. (Blue Cross), have joint contracts for medical and hospital services covering about 60% of all persons residing in Massachusetts.[1] Except for medical emergencies and out-of-State treatment, Blue Shield will only pay a "participating physician" who agrees in writing to the standard Agreement. About 99% of all physicians practicing medicine in Massachusetts have thus been coerced into signing the Agreement. Since 1969 the participating physicians have given up "balance billing," and Blue Shield has promised to compensate them in accordance with a "usual and customary" charge formula set forth in a schedule of benefits periodically filed with the Commissioner.

[1] The Group Insurance Commission has contracted with Blue Shield on behalf of State employees, including judges. The plaintiffs have waived objection to any possible resulting conflict, and we have not followed the procedure provided by Canon 3(D) of the Code of Judicial Conduct, S.J.C. Rule 3:25, 359 Mass. 846 (1972). Cf. G. L. c. 268A, §§ 6, 6A. See *Graham* v. *McGrail*, 370 Mass. 133, 138-139 (1976).

That formula provides for payment of the lesser of (a) - the physician's submitted charge, (b) his usual charge, calculated as the median of his reported charges during a reporting period, (c) the applicable customary charge, which is either the 90th percentile in the reported charges for established physicians or the 50th percentile for newly established physicians. Blue Shield has failed to reimburse physicians in accordance with the formula, and has failed to perform its obligation to update both usual and customary charges at intervals of one year or less. Since July 1, 1977, Blue Shield has made payments in accordance with the 1977 Amended Schedule of Benefits, which was made unilaterally by Blue Shield and was not agreed to by the participating physicians.

Counts 1 and 2, which were upheld in part, allege breaches of the Agreement. Counts 5 and 6, which were dismissed, attack the validity of the Agreement as an unconscionable "contract of adhesion" and allege unilateral amendments and bad faith actions rendering the agreement a nullity. Count 7 alleges "continuing fraud," and count 8 alleges violation of G. L. c. 93A; count 7 was upheld and count 8 was upheld in part.

3. *The regulatory framework.* Contrary to the plaintiffs' contentions, we agree with the assertion of Blue Shield and the Commissioner that G. L. c. 176B establishes a comprehensive scheme for the public supervision of medical service corporations. See *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117, 126-127 (1976); *Godfrey* v. *Massachusetts Medical Serv.*, 359 Mass. 610, 614-615 (1971); *Massachusetts Medical Serv.* v. *Commissioner of Ins.*, 344 Mass. 335, 337-339 (1962); appeal after remand, 346 Mass. 346 (1963). The Commissioner must approve Blue Shield's articles of organization (§ 2), its by-laws (§ 3), the form of its agreements with participating providers and its methods of compensating them (§ 4), its subscription certificates and the rates it charges subscribers (§§ 4, 6). He has free access to its records, may exam-

ine its employees as to its affairs, and may prescribe the manner in which its records are kept (§ 9). He may enforce the provisions of the statute through judicial proceedings (§§ 13, 17). Moreover, § 12 provides for administrative decision, subject to judicial review, of any dispute between Blue Shield and a participating physician, or between Blue Shield and a subscriber. Although Blue Shield is generally exempt from the insurance laws (§ 14), it is explicitly subjected to G. L. c. 176D, providing for cease and desist orders against unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. G. L. c. 176D, § 1 (a). See *Group Life & Health Ins. Co.* v. *Royal Drug Co.*, 440 U.S. 205 (1979) (application of anti-trust laws to "Pharmacy Agreement"); *Kartell* v. *Blue Shield of Mass., Inc.*, 592 F.2d 1191 (1st Cir. 1979) (application of anti-trust laws to agreements with physicians).

4. *Review of the Commissioner's decisions.* In this context, we agree with the judge's ruling that the plaintiffs cannot in this action attack the Commissioner's approval of the Agreement or his approval of the 1977 Amended Schedule of Benefits. Under G. L. c. 176B, § 12, such a decision or order of the Commissioner "may be revised as justice and equity may require upon a petition in equity filed, within ten days after the promulgation of such decision or order in the superior court within and for the county of Suffolk by any party aggrieved by such decision or order." To contest the validity of the Agreement or the Schedule, an objector must first become a "party" to the administrative proceedings that result in approval. *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 671-674 (1975). He must then follow the statutory procedure for judicial review. *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. 359, 368-370 (1978). The plaintiffs did neither. "The rate regulating function is administrative. It is appropriate, if not necessary, that there be by the administrator, rather than in court, the hearing in respect of rates which is necessary

at some stage of the administrative-judicial process surely to meet constitutional requirements." *Massachusetts Medical Serv.* v. *Commissioner of Ins.,* 344 Mass. 335, 339 (1962).

The plaintiffs claim that the Commissioner's approval was given in a proceeding to which they were not parties, without prior notice to them, and without hearing or opportunity for cross-examination, and that he acted arbitrarily and capriciously. The judge ruled that the plaintiffs had actual notice of the 1977 Amended Schedule of Benefits but failed to take action until months later. In our view, all such contentions should have been presented in the first instance to the Commissioner. "A proceeding for declaratory relief in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust his administrative remedies before seeking judicial relief." *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444, 450 (1973).

5. *Interpretation and enforcement of the Agreement; fraud.* The plaintiffs argue that so far as they assert common law claims for breach of contract and for fraud they are not required to resort to administrative remedies before bringing suit. See *Papetti* v. *Alicandro,* 317 Mass. 382, 386 (1944); *Nader* v. *Allegheny Airlines, Inc.,* 426 U.S. 290, 304-306 (1976). The judge upheld that argument, and we agree that it has force in a variety of circumstances. See *Lowell Gas Co.* v. *Attorney Gen., ante* 37, 43-46 (1979). But if the exercise of the Commissioner's regulatory power may afford the plaintiffs some relief, or may affect the scope or character of judicial relief, exhaustion of the possibilities of action by the Commissioner should ordinarily precede independent action in the courts. See *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 588 (1972). We do not have before us an action to enforce G. L. c. 176B, brought by an "aggrieved party" under § 17. See *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.,* 371 Mass. 117, 122 (1976).

A complete administrative remedy is provided by G. L. c. 176B, § 12, subject to review in the Superior Court: "Any dispute or controversy arising between a medical service corporation and any participating physician ... may within thirty days after such dispute or controversy arises be submitted by any person aggrieved to a board serving in the division of insurance and consisting of the commissioner or a person designated by him, the chairman of the board of registration and discipline in medicine or any person designated by him, and the attorney general or a person designated by him, for its decision with respect thereto." In *Rose* v. *Board of Review in the Div. of Ins.*, 346 Mass. 581, 586 (1964), we enforced an order of the board that a participating physician return to a patient an overcharge of $109.

We need not now decide whether a claim like that in the *Rose* case could be brought in a court in the first instance if it could have no significant impact on the regulatory system. The *Rose* case, however, required a decision as to the validity of an agreement between Blue Shield and the employer of the patient (a "group medical service agreement"), a matter of pervasive significance. So here, the plaintiffs' contract and fraud claims amount to an attack on the entire system by which Blue Shield compensates participating physicians. In such cases a court should not act upon subject matter peculiarly within the agency's specialized field without taking into account what the agency has to offer, "for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements." 3 K.C. Davis, Administrative Law § 19.01 (1958). See *Murphy* v. *Administrator of the Div. of Personnel Administration, ante* 217, 221 (1979); *Gallo* v. *Division of Water Pollution Control*, 374 Mass. 278, 290-292 (1978).

The plaintiffs invite us to review the frequency with which the board has been convened, the adequacy of its staff, its technical competence, and the efficiency of its procedures. We decline the invitation.

6. *The claims under G. L. c. 93A.* The judge ruled that G. L. c. 93A was not rendered inapplicable by reason of its overlap with G. L. c. 176D. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-79 (1977). He also ruled that the plaintiffs were required to seek the aid of the Commissioner under c. 176D before filing suit under c. 93A. See *Lowell Gas Co.* v. *Attorney Gen.*, *ante* 37, 45-46 (1979); *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117, 126-127 (1976). We uphold those rulings. But we disagree with his further ruling that the plaintiffs had in fact exhausted c. 176D.

The judge relied on two affidavits. One discloses a letter on behalf of the Federation plaintiffs announcing their intention to commence a class action in this court for the appointment of a receiver and other relief, and inviting the Commissioner to seek similar relief under G. L. c. 176B, § 13. A reply on behalf of the Commissioner expressed the opinion that it was not appropriate for him to involve himself in such a proceeding. The second affidavit, submitted by the Society plaintiffs, describes an informal conference between the president of the Society and the Commissioner's deputy in which the latter expressed a lack of concern with the grievances of participating physicians. The affiant expresses the opinion that the Commissioner and his subordinates are biased against participating physicians and that resort to an administrative tribunal including the Commissioner or his delegate would be futile. Neither affidavit makes any reference to c. 176D, and we do not think they establish that the plaintiffs have exhausted remedies under that chapter.

Under G. L. c. 93A, § 11, successful plaintiffs may recover damages for past conduct, but there is no provision for the award of such damages by the Commissioner under G. L. c. 176D. In such cases, where judicial action should await administrative action, the proper course may be to stay the action instead of dismissing it. *J. & J.*

*Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540-541 (1976). Here, however, an administrative damage remedy was available under G. L. c. 176B, § 12. We think, therefore, that dismissal rather than stay is appropriate.

7. *Other issues.* The judge ruled on a number of issues other than those relating to the doctrines of primary jurisdiction and exhaustion of administrative remedies. We pass on no such issues. See *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 586-587 (1972).

8. *Disposition.* The cases remain in the Superior Court. In accordance with this opinion, the complaints are to be dismissed.

*So ordered.*