ROBERT HATHAWAY & others[1] vs. COMMISSIONER
OF INSURANCE.

Suffolk.    October 2, 1979. — January 21, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & LIACOS, JJ.

*Administrative Law*, Hearing, Judicial review, Standing.  *Jurisdiction*,
Administrative matter, Declaratory relief.  *Due Process of Law*, Right
to hearing.  *Medical Service Corporation.*

In the circumstances, subscribers to group medical insurance plans with
Blue Shield of Massachusetts, Inc., were not entitled to a hearing prior
to the approval by the Commissioner of Insurance of increases in the
fees paid to physicians and other health care providers and in the rates
to be charged to group subscribers.  [554-556]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 14, 1978.

The case was heard by *Smith*, J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct
appellate review.

*Susan F. Brand* for the plaintiffs.

*Paul W. Johnson*, Assistant Attorney General, for the
Commissioner of Insurance.

*Jeffrey Swope* for Blue Shield of Massachusetts, Inc.,
amicus curiae, submitted a brief.

BRAUCHER, J.   The plaintiffs represent subscribers to
group medical insurance plans with Blue Shield of Massa-
chusetts, Inc. (Blue Shield).  They allege that the Commis-
sioner of Insurance (Commissioner), without a hearing, ap-

---

[1] Hathaway sues individually and on behalf of Local 509, Service Em-
ployees International Union; the other plaintiffs are Joseph L. Roche, an
employee of Western Massachusetts Health Planning Council, Inc., and
the city of Springfield.

proved certain increases in the fees to be paid to physicians and other health care providers and in the rates to be charged to group subscribers. Later the Commissioner denied the plaintiffs' request for a hearing, and they seek judicial review and declaratory relief. A judge of the Superior Court allowed the Commissioner's motion to dismiss the complaint, ruling that the plaintiffs were not entitled to a hearing. The plaintiffs appealed to the Appeals Court, and we allowed their application for direct appellate review. We affirm the decision of the Superior Court.

We summarize the allegations of the complaint. Effective July 1, 1978, Blue Shield planned to increase its payments to physicians (physicians' profiles) by twelve per cent and also to increase the premiums for subscribers to group plans by twelve per cent. In June, 1978, the Commissioner instructed Blue Shield not to adjust the physicians' profiles without his prior approval, stating that any rate increase predicated on the anticipated "update" was subject to challenge. Blue Shield did not put into effect the planned adjustment, and either suspended or agreed to refund the planned rate increases. Negotiations ensued between the Commissioner and Blue Shield, conducted in private without notice, opportunity to be heard, or participation by the plaintiffs or other subscriber representatives.

On July 21, 1978, the Commissioner announced that an agreement had been reached with Blue Shield resolving a dispute over physician fee levels, and that Blue Shield had "agreed to limit the upward rate impact of physicians' fees this year to 5%." On August 2, 1978, the plaintiffs petitioned the Commissioner for a public hearing on the rate increases and profile adjustments. The petition was denied on August 4, 1978, and notice of the denial was received by the plaintiffs on August 8, 1978. The present action was begun August 14, 1978.

1. *Jurisdiction.* The Commissioner has not renewed, in his argument to us, jurisdictional contentions he made in the Superior Court, and we discuss the jurisdiction of the Superior Court only briefly. The complaint is not framed

as a "bill in equity" to enforce G. L. c. 176B, pursuant to § 17 of that chapter, which authorizes such a bill to be "brought in the supreme judicial court" by an "aggrieved party." See *SDK Medical Computer Servs. Corp.* v. *Professional Operating Management Group, Inc.*, 371 Mass. 117, 122 (1976). Although the complaint characterizes the Commissioner's announcement of July 21, 1978, as a "decision and order," the complaint does not purport to seek review of that decision or order directly pursuant to G. L. c. 176B, § 12. See *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 751-752 (1979). Rather, in accordance with our statement in the *Nelson* case that "all such contentions should have been presented in the first instance to the Commissioner," the plaintiffs by their petition of August 2, 1978, sought a hearing by the Commissioner. His denial of that petition was a decision subject to review in the Superior Court under G. L. c. 176B, § 12. As the petitioners, the plaintiffs were parties aggrieved by the denial.

The complaint was not filed within ten days after the Commissioner's July 21 announcement. It was therefore too late as a petition for judicial review of that "decision" under G. L. c. 176B, § 12. It is ordinarily not appropriate to grant declaratory relief to a party which has ignored its statutory right of direct review. See *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 792 (1975). Therefore, as the judge ruled, any decision made on July 21 approving rates and physicians' profiles is not subject to review in the present action. On this basis, the Commissioner argues that there is now no actual controversy, since the declaratory relief the plaintiffs seek would not remedy the increased rates of which they complain. But the judge left open the possibility that, if the plaintiffs had a right to an administrative hearing, the Commissioner could reconsider his approval of the increased rates. In view of our ruling on the plaintiffs' right to a hearing, we do not decide the question whether a decision subject to judicial review was made on July 21, or the question whether recon-

sideration of such a decision would be proper in the situation so presented.

2. *Right to hearing.* In *Massachusetts Medical Serv.* v. *Commissioner of Ins.*, 344 Mass. 335, 339-340 (1962), we observed that G. L. c. 176B, § 4, "does not expressly require a hearing before the Commissioner. There may be instances, as where certain new filings are approved, in which a hearing will not be necessary or advisable." But we suggested that Blue Shield might have a constitutional right to a quasi judicial hearing before its proposed rates were disapproved.[2] We also said, "The plan is a voluntary one, both as to subscribers and physicians. As stated above, an intention to have the [physicians'] fees fixed by a public agency is not implied in the statute." *Id.* at 341. The latter conclusion is not affected by St. 1968, c. 432, § 9, amending § 4 to provide for written approval of "methods of compensating" providers rather than their rates of compensation.

The plaintiffs do not now contend that they have a statutory right to an administrative hearing. Instead, they assert that they have a "protected property interest" by virtue of the requirement of § 4 that benefits not be "unreasonable in relation to the rate charged" and that the rates not be "excessive, inadequate or unfairly discriminatory." Such a property interest, they contend, brings into play a constitutional right to due process of law. See *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514-516 (1977), and cases cited. They contend further that they are entitled to a trial-type proceeding, with full rights to produce evidence and cross-examine witnesses, prior to action by the Commissioner.

We accept this reasoning only in part. The plaintiffs clearly have an interest in the rates to be charged under future agreements with Blue Shield. To characterize that interest as a "property interest" is to put a strain on the language. Cf. *McCarthy* v. *Sheriff of Suffolk County*, 366

[2] See *Cambridge Elec. Light Co.* v. *Department of Pub. Utils.*, 363 Mass. 474, 488 (1973).

Mass. 779, 785 (1975) (interest in continued employment
was mere "expectancy"). But the plaintiffs might well be
said to have "a legitimate claim of entitlement" to rates
which are not "excessive." See *Geneva Towers Tenants
Organization* v. *Federated Mortgage Investors,* 504 F.2d
483, 493-496 (9th Cir. 1974) (Hufstedler, J., dissenting).
Certainly the regulatory scheme of G. L. c. 176B is suffi-
ciently comprehensive to warrant treatment of the rates as
involving State action. See *Nelson* v. *Blue Shield of Mass.,
Inc.,* 377 Mass. 746, 750 (1979).

To determine what process is due, however, we must also
"balance the interests of the government in the procedure
adopted against the citizen's interest in greater safeguards."
*Hahn* v. *Gottlieb,* 430 F.2d 1243, 1246-1249 (1st Cir. 1970)
(rent increases in federally-subsidized housing). In striking
the balance, we take into account the fact that medical in-
surance is not compulsory. Contrast *Shavers* v. *Attorney
Gen.,* 402 Mich. 554, 597-611 (1978) (compulsory no fault
automobile insurance); *Pennsylvania Coal Mining Ass'n* v.
*Insurance Dep't,* 471 Pa. 437, 445-449 (1977) (compulsory
black lung insurance). Moreover, commercial insurers and
nonprofit health maintenance organizations provide alter-
natives to Blue Shield group plans, and are not subject to
Blue Shield rates. Cf. *Associated Indus.* v. *Commissioner of
Ins.,* 356 Mass. 279, 283-285 (1969) (hearing not required
for approval of workmen's compensation insurance rates).

Under the statute rates for nongroup subscribers are sub-
ject to prior approval by the Commissioner, but group rates,
with some exceptions, may take effect before they are filed
with the Commissioner. Group rates, under § 4, need only
be "filed with the Commissioner within thirty days after
their effective date"; they are then "subject to subsequent
disapproval." As the Commissioner points out, the distinc-
tion seems to recognize that nongroup subscribers may have
less bargaining power than group subscribers. In view of
the voluntary character of Blue Shield plans, the availabili-
ty of alternatives, and the bargaining power of group sub-
scribers, the Commissioner's action in this case poses a far

less serious threat to the interests of the plaintiffs than those involved in the cases where a hearing has been held to be required by the Constitution.

We do not, however, lay down any broad rule rejecting the plaintiffs' claim to a right to a hearing. Commissioners have often held hearings on similar issues, and hearings may be highly advisable even though not required, although as a practical matter not every subscriber can be allowed full participation. We do not wish to "discourage efforts to develop effective procedures for the airing of subscribers' grievances." See *Hahn* v. *Gottlieb*, 430 F.2d 1243, 1251 (1st Cir. 1970). But the present case presents special reasons for denying a hearing. The real dispute was the amount to be paid to physicians and other providers; it seems obvious that if Blue Shield paid them more it would have to charge the subscribers correspondingly. Physicians were complaining bitterly of failure to make upward adjustments to keep pace with general inflation. See *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746 (1979). The Commissioner had negotiated an increase of five per cent in group subscriber rates instead of the twelve per cent proposed by Blue Shield. Blue Shield was expected to file a new schedule of physicians' charges for future effect, and the Commissioner had announced that a public hearing would be held on that filing. Thus the hearing requested by the plaintiffs would have had a practical effect only on the charges made before the hearings were completed. We hold that in these circumstances the Constitution did not require the hearing demanded by the plaintiffs.

3. *Other issues.* In view of our disposition of the hearing issue, we need not address the other issues presented. In particular, we do not decide whether Blue Shield was a necessary party.

*Judgment affirmed.*