James P. KARTELL, M.D., et al.,
Plaintiffs-Appellees,

and

Grant V. Rodkey, M.D., et al.,
Intervenor-Plaintiffs-Appellants,

v.

BLUE SHIELD OF MASSACHUSETTS,
INC., et al., Defendants-Appellees.

No. 82–1134.

United States Court of Appeals,
First Circuit.

Argued June 11, 1982.

Decided Sept. 8, 1982.

Kenneth Laurence, with whom Thayer
Fremont-Smith, Michael K. Loucks, Lee T.
Gesmer, and Choate, Hall & Stewart, Bos-

ton, Mass., were on brief, for intervenor-plaintiffs-appellants.

Reginald H. Howe, with whom Daniel O. Mahoney, Douglas H. Wilkins, and Palmer & Dodge, Boston, Mass., were on brief, for defendants-appellees.

Christopher E. Nolin, with whom Stanley V. Ragalevsky, Deborah A. Laupheimer, Warner & Stackpole, Boston, Mass., James vanR. Springer, and Dickstein, Shapiro & Morin, Washington, D. C., were on brief, for plaintiffs-appellees.

Before CAMPBELL and BREYER, Circuit Judges, and ROSENN,* Senior Circuit Judge.

ROSENN, Senior Circuit Judge.

This appeal brings to the court an internecine dispute among members of the Massachusetts Medical Society (Society) regarding how best to challenge payment practices of Blue Cross of Massachusetts, Inc. (Blue Cross) and Blue Shield of Massachusetts, Inc. (Blue Shield) that effectively limit the fees that can be earned by Massachusetts physicians who render services to Blue Cross and Blue Shield subscribers. The case comes to us in an unusual posture. The Society, having lost control of litigation brought by four individual physicians but with its full financial support, moved, along with two individual physicians, to intervene in order to protect its interests in the action. By their complaint in intervention the Society and the two individual physicians also sought to enlarge the scope of the claims against Blue Cross and Blue Shield, a litigation strategy disagreement which had contributed to the schism between them and the original plaintiffs. The district court in an unexplicated order allowed the intervention, but because it denied plaintiff-intervenors (intervenors) the opportunity to raise their new claims, they have appealed. We conclude that no final order from which appeal would lie exists, and that the district court's order did not effectively deny the intervenors preliminary injunctive relief so as to create a risk of irreparable injury pendente lite. We therefore dismiss the appeal for lack of jurisdiction.

I.

Blue Shield is a nonprofit medical service corporation that offers prepaid plans that provide coverage for the cost of medical services rendered by physicians. Blue Cross is a nonprofit hospital service corporation that offers plans covering the cost of hospital and related medical care. The organizations together issue and administer joint subscriber contracts offering their services to the public under authority of Massachusetts law.

The original plaintiffs and intervenors primarily object to two basic restrictions promulgated by Blue Shield in concert with Blue Cross. First, Blue Shield, which enters into contracts with physicians and other health care providers in Massachusetts, requires "participating physicians" to accept as full payment for any covered services an amount equal to 95% of their usual and customary charges, the latter unilaterally determined by Blue Shield. Participating physicians must therefore agree not to bill a Blue Shield subscriber for the difference between what the physician would normally charge and the amount allowed by Blue Shield ("balance billing"). The second restriction promulgated by Blue Shield, which effectively enforces the ban on balance billing, is contained in its contracts with its subscribers. In these contracts Blue Shield states that it will not cover the cost of either nonemergency medical services rendered in Massachusetts by any physicians with whom Blue Shield has not entered into a contract or emergency care provided by such "nonparticipating physicians" when a participating physician could have rendered the service. Thus only participating physicians, who in their contracts with Blue Shield have agreed to the ban on

---

* Of the Third Circuit, sitting by designation.

balance billing, are entitled to claim reimbursement from Blue Shield.[1]

To challenge these practices, the Society sponsored a series of actions against Blue Cross and Blue Shield. The instant lawsuit, commenced on March 10, 1978, is the third of four such actions.[2] It was brought by four Massachusetts physicians represented at the Society's expense by two law firms, Warner & Stackpole and Dickstein, Shapiro & Morin. Although it did not name the Society as a plaintiff, the Society paid for substantially all counsel fees and the case was conducted in many respects as if the Society were the client.[3] Like its predecessor antitrust action, *Hedberg v. Blue Cross of Massachusetts, Inc., see supra* note 2, the instant action alleges violations of §§ 1 and 2 of the Sherman Act. Unlike its predecessor, the instant action did not seek damages but only injunctive relief. And unlike its predecessor, the instant action was not brought as a class action.

The action proceeded by first amended complaint, and on March 31 the original plaintiffs filed a motion for a preliminary injunction. Thereafter defendants filed a motion to dismiss, relying primarily on the "state action" defense of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and on McCarran-Ferguson Act immunity from the antitrust laws, *see* 15 U.S.C. §§ 1011–15. On August 3, 1978, the

---

1. The plaintiffs also object (1) that Blue Cross helps perpetuate Blue Shield's control over the compensation that can be earned by physicians by generally refusing to compensate physicians other than salaried health care providers on the staff of institutions, primarily hospitals, that enter into agreements with Blue Cross; (2) that Blue Shield directs its subscribers not to use nonparticipating physicians and its participating physicians not to refer patients to nonparticipating physicians; and (3) that Blue Cross directs its participating hospitals not to employ nonparticipating physicians.

2. The first case, *Nelson v. Blue Shield of Mass., Inc.,* 377 Mass. 746, 387 N.E.2d 589 (1979), was filed in October 1977 in Massachusetts Superior Court by the Society and four participating physicians who are also members of the Society. That action, brought under state law, was dismissed under the doctrines of primary jurisdiction and exhaustion of administrative remedies.

The second case, *Hedberg v. Blue Cross of Mass., Inc.,* No. 77–3308 (D.Mass., filed November 1977), was brought by the Society and three member physicians as a class action on behalf of all participating physicians, alleged violations of §§ 1 and 2 of the Sherman Act and §§ 4 and 16 of the Clayton Act, and sought damages and injunctive relief. Plaintiffs attempted to amend their complaint in *Hedberg* approximately three months before filing the instant action to omit any claim for damages. The defendants opposed the amendment. No action was taken on the motion to amend and the action was dismissed on March 1, 1982, under Local Rule 22, without objection by either party, after no action was taken for two years. *See infra* note 8.

The fourth case, *Rodkey v. Blue Shield of Mass., Inc.,* No. 82–317 (D.Mass., filed Feb. 5, 1982), was commenced by the intervenors in the instant action. The complaint in *Rodkey* consists of the proposed amended complaint proffered by intervenors in the case at bar.

3. In an affidavit supporting the motion to intervene Stanley Wyman, M.D., president of the Society, makes the following representation.

Since the Society's decision in May 1977 to challenge certain restrictive, inequitable physician reimbursement policies imposed by defendants Blue Shield ... and Blue Cross ... upon both participating and non-participating physicians in the Society's membership, it has been my understanding and intention, and the understanding and intention of the Society and of its officers, that all Society members who have volunteered to act as named plaintiffs in actions instituted by the Society's legal counsel would fully cooperate with the Society and act at all times in the interests of the Society, its member physicians and the physicians of the Commonwealth of Massachusetts.

The original plaintiffs apparently shared this view. The affidavit also quotes Dr. James Kartell, one of the original plaintiffs, as having made a statement before the Society's Committee on Legislation to the same effect.

Warner & Stackpole, counsel for the original plaintiffs, take a contrary position.

Although the Medical Society paid most of the legal expenses incurred in the representation of the named plaintiffs in this case, we have always considered ourselves as having a normal attorney-client relationship, subject to all of the attendant obligations and responsibilities an attorney has to a client, with each of the plaintiffs....

We never viewed the plaintiffs as mere "nominees" subject to the control of the Medical Society, and the Society has never previously so suggested to us.

Affidavit of William J. Speers, Jr. (a member of Warner & Stackpole) at 3–4.

district court granted defendants' motion to dismiss on the ground that defendants were compelled by state law, M.G.L. c. 176A and c. 176B § 7, to refrain from compensating nonparticipating physicians, thereby rendering their arguably anticompetitive conduct immune from prosecution under the state action doctrine enunciated in *Parker v. Brown, supra.*

This court vacated the judgment of the district court in *Kartell v. Blue Shield of Massachusetts, Inc.,* 592 F.2d 1191 (1st Cir. 1979). The court held that the district court should have abstained from deciding the state law question, namely whether defendants' conduct was in fact compelled by statute, and directed the court to await the outcome of cases then pending before the Supreme Judicial Court of Massachusetts. This court also indicated that if the decisions in the pending cases did not resolve the state law question, the district court might consider certifying it to the Massachusetts court. The district court eventually adopted this suggestion.[4]

Meanwhile, during the summer of 1981 the Society, upset at the slow progress of the *Kartell* action and legal fees it had incurred in excess of $500,000, determined that the interests of its constituents would best be served by changing counsel and litigation strategy. The original individual plaintiffs disagreed,[5] however, and refused to cooperate with the Society.[6] The Society therefore found itself in the awkward position of having lost control of a lawsuit it had financed for three years. It retained new counsel. Shortly thereafter, the Supreme Judicial Court filed its opinion answering the certified questions. The intervenors, a participating physician, a nonparticipating physician, and the Society, then moved to intervene in the instant action pursuant to both Fed.R.Civ.P. 24(a), as of right, and 24(b), by permission. In conjunction with their motion to intervene they filed a "Complaint of Intervenor-Plaintiffs." The proposed complaint in intervention differs from original plaintiffs' first amended complaint in three principal respects. First, the proposed complaint seeks relief on behalf of two classes of physicians, participating and nonparticipating. It also adds claims for damages as well as injunctive relief. Finally, the proposed complaint appears to assert broader legal theories than does the first amended complaint.[7]

4. Plaintiffs moved to certify questions, which motion was granted. The Supreme Judicial Court answered: (1)(a) that neither M.G.L. c. 176B § 7 nor any other statute or state policy requires Blue Shield to limit fees to participating physicians; (1)(b) that the statute does require Blue Shield to refuse to make payment for nonemergency services provided in-state by nonparticipating physicians; and (2) that Blue Cross is not permitted under the Massachusetts statutes to offer coverage for medical services covered by Blue Shield. *Kartell v. Blue Shield of Mass., Inc.,* 1981 Mass.Adv.Sh.1980, 425 N.E.2d 313 (1981).

5. Only three of the original four plaintiffs continue to be represented by their original counsel. The fourth, Hoffman, left the state and withdrew from the litigation.

6. The acrimony over litigation strategy and what is best for the Society's members is reflected in an affidavit of its president, Stanley Wyman, M.D.

> Dr. James P. Kartell, the most actively involved of the named plaintiffs, has, in widely disseminated letters which I have read, denounced me and the Society's officers for the termination of the Society's attorney-client relationship with Warner & Stackpole and has advocated mass resignations of physicians from the Society.

7. The parties disagree among themselves as to what claims and theories of liability are encompassed by the first amended complaint now before the district court. Defendants assert that plaintiffs narrowed their case to challenge only Blue Shield's refusal to deal with nonparticipating physicians, a contention vigorously disputed by both original plaintiffs and intervenors. Original plaintiffs maintain that with the exception of the class-based and damage claims, the proposed complaint in intervention seeks relief virtually identical to that requested in the complaint now before the court, a contention that is rejected by the intervenors. We need not at this juncture decide whose characterization of the breadth of the claims is correct. We do note that the district court, in partially denying defendants' motion for summary judgment, has implicitly rejected the defendants' argument that the first amended complaint seeks injunctive relief only with respect to Blue Shield's refusal to deal with nonparticipating physicians. *See Kartell v. Blue Shield of Mass., Inc.,* 542 F.Supp. 782 (D.Mass.1982).

The district court, in a cryptic order, dismissed the *Hedberg* action, allowed the intervention in this proceeding, but barred intervenors from introducing any new claims in their complaint in intervention.[8] The court did not indicate whether it had acted under authority of Rule 24(a) or 24(b).

Intervenors filed a timely notice of appeal. Defendants moved to dismiss under Local Rule 12 for lack of appellate jurisdiction. Expressing some doubts about the appealability of the court's order, on April 14, 1982, this court issued a Memorandum and Order "hold[ing] the motion to dismiss for lack of jurisdiction in abeyance pending full briefing of the case." Because we now conclude that we are without jurisdiction of the appeal we do not reach the substantive question whether the district court properly allowed the intervention without allowing intervenors to raise any new claims at this stage of the litigation.

## II.

The intervenors on appeal maintain that the district court erred in barring them from raising the claims in their complaint in intervention not already before the court. They argue that as intervenors of right under Fed.R.Civ.P. 24(a)(2) they are entitled to assert all claims relating to the nature of the relationship between Massachusetts physicians and Blue Cross and Blue Shield. In support of their claim that this court has jurisdiction to hear the appeal, notwithstanding that the underlying action is still pending in the district court, intervenors assert two bases of appellate jurisdiction. They argue that the district court's order is appealable as a final order because it denied them the full intervention of right to which they are entitled. Alternatively, intervenors assert that the district court's order is immediately appealable under 28 U.S.C. § 1292(a)(1) as the denial of injunctive relief. Neither ground is adequate to support the appellate jurisdiction of the court at this time.

## A.

Intervenors' first argument for jurisdiction is predicated on their asserted status as intervenors of right. They argue that once entitled to intervene of right they are entitled to raise all claims that relate to the restrictive policies of Blue Cross and Blue Shield. Because they have not been granted full intervention, the argument continues, they are entitled to immediate appellate review of the district court's refusal to allow them to raise the claims in their complaint in intervention.

A division of authority exists regarding whether immediate appeal lies from the denial of a motion to intervene of right under Rule 24.[9] The circuits are in accord,

---

**8.** The order provides:

> Judge Garrity has recused himself in *Hedberg* and transferred this case to me. I observe that no action has been taken by any party for two years, and the case is subject to dismissal under Local Rule 22. Accordingly, the clerk is ordered to issue notice forthwith under Local Rule 22.
>
> The intervenors' motion is allowed in *Kartell* in part. The intervenors may intervene for the purpose of joining the present plaintiffs as parties plaintiff in the existing complaint. So much of their motion as seeks to introduce new claims by way of an intervenors' complaint is denied. The clerk shall forthwith set this case down for a preliminary pre-trial conference.

**9.** Rule 24(a): *Compare Weiser v. White*, 505 F.2d 912, 916–17 (5th Cir.), *cert. denied*, 421 U.S. 993, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975) (party can appeal denial of motion to intervene under Rule 24(a) only if he was in fact improperly denied intervention—appealability turns on merits of intervention claim), *with Commonwealth v. Rizzo*, 530 F.2d 501, 504 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976), *and Ionian Shipping Co. v. British Law Ins. Co.*, 426 F.2d 186, 188–89 (2d Cir. 1970) (denial of motion to intervene is appealable as an appeal from a final order regardless of ultimate merits of movant's claim). The First Circuit has treated denials of motions to intervene of right as final, appealable orders. *See, e.g., Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir. 1980); *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979).

Rule 24(b): *Compare Cameron v. President & Fellows of Harvard College*, 157 F.2d 993 (1st Cir. 1946) (denial of intervention under Rule 24(b) is a final, appealable order only if an abuse of discretion), *with Estate of Dixon*, 666 F.2d 386 (9th Cir. 1982) (denial of intervention under Rule 24(b) is a final, appealable order).

however, that no immediate appeal lies from a grant of intervention. *See, e.g., Brown v. New Orleans Clerks & Checkers Union,* 590 F.2d 161 (5th Cir. 1979); *EEOC v. American Telephone & Telegraph Co.,* 506 F.2d 735 (3d Cir. 1974); *Ionian Shipping Co. v. British Law Insurance Co.,* 426 F.2d 186 (2d Cir. 1970).

The case at bar poses the question of the appealability of an order making intervenors party to the action but limiting the claims that can be asserted by them. Whether such an order should be treated as a final, appealable order was directly addressed in *Shore v. Parklane Hosiery Co.,* 606 F.2d 354 (2d Cir. 1979). In *Parklane Hosiery,* members of a class who were dissatisfied with the terms of a settlement agreement arrived at by the named parties in an action brought to challenge an allegedly fraudulent freeze-out merger moved to intervene to challenge the settlement. The district court granted the motion to intervene so that the intervenors could participate in the settlement approval hearings but denied their requests for a stay or a hearing. On appeal the Second Circuit examined the policies underlying intervention as of right and interlocutory appeals, and concluded that permitting intervention adequately protected a party's interests and rendered inappropriate an interlocutory appeal from an order granting intervention but withholding other relief. Characterizing the district court's action as a grant, and not a partial denial, of intervention under Rule 24, the court concluded that it had no jurisdiction over the appeal. *Id.* at 356. *Cf. Van Hoomissen v. Xerox Corp.,* 497 F.2d 180 (9th Cir. 1974) (grant of partial intervention under Rule 24(b) not appealable).

The *Parklane Hosiery* court began by noting that unlike persons denied intervention, who cannot appeal from any subsequent order or judgment in the litigation, successful intervenors acquire full status as parties and can therefore prosecute a subsequent appeal. 606 F.2d at 356. The court also adverted to the advisory committee note on the Rule which suggests that inter-

vention as of right may be "subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings. 28 U.S.C.A., Fed.R.Civ.P. 24, *Notes of Advisory Committee on Rules,* at 18." *Id.* It then held that the order of the district court constituted a grant of intervention and that the order was not a final order appealable under 28 U.S.C. § 1291. As the court noted, for an order to be appealable it must be a final decision which "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment,'" 606 F.2d at 357 (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), or, to qualify as an exception to the finality requirement, the order must "'conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)). The *Parklane Hosiery* court then concluded:

The order appealed from does not meet these requirements. It made appellants parties to the litigation, thus giving them the right to appeal from an unsatisfactory final order. On that appeal, this Court may review the district court's refusal to grant all of appellants' requested relief, including their application for a stay which was incorporated in the notice of motion for intervention. The district court's order is therefore interlocutory and cannot now be reviewed on appeal.

*Id.* (citations omitted).

The court also held, alternatively, that even if the order appealed from were construed as a partial denial of intervention, the better practice would be to dismiss for lack of jurisdiction, since such a practice both would insure the intervenors full review when the merits of the underlying claims were also before the court and would comport with the Supreme Court's "[long established] policy against piecemeal appeals." *Id.* (quoting *Gardner v. Westing-*

*house Broadcasting Co.*, 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978).[10]

Intervenors argue that *Parklane Hosiery* is inapposite, and they attempt to derive a right of immediate appeal of the order from what they argue is their right as intervenors of right under Rule 24(a) to raise all related claims. Such immediate review is necessary, they maintain, to protect their full right of intervention.

We find the reasoning of *Parklane Hosiery* persuasive[11] and conclude that the district court's order in the case at bar should be treated as a grant of intervention, and as such is not now appealable. The intervenors were allowed to intervene and, as parties to the suit with full appellate rights in this action, can adequately protect their interests on appeal from a final decision. *See Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Association,* 646 F.2d 117 (4th Cir. 1981); *Wheeler v. American Home Products Corp.,* 582 F.2d 891, 896–97 (5th Cir. 1977). They are therefore distinguishable from would-be intervenors who if denied intervention altogether are without appellate rights unless allowed immediately to appeal. Regardless of whether intervenors are in fact intervenors of right or whether they are entitled to raise the new claims contained in their complaint in intervention, these questions can be resolved upon completion of the proceedings before the district court with no more

prejudice to the intervenors than is caused to any litigant properly denied interlocutory review of an unfavorable order. Their asserted need to protect their right of full intervention does not justify circumventing the strong federal policy against piecemeal appeals. *See also infra* Part II.B.

Our conclusion that an appeal is impermissible at this juncture is reinforced by a consideration of the nature of the dispute between the plaintiff factions underlying this litigation. The basis for the intervention is, at bottom, the recent antagonism that has developed between the Society and the original plaintiffs. By allowing the Society a circumscribed reentry into the lawsuit, the district court essentially reestablished the status quo ante.[12]

■ In proffering their new claims, however, intervenors are attempting to go beyond simply protecting their interests as they existed before the rift developed between the Society and the original plaintiffs. Rather, they seek the functional equivalent of an amendment to the complaint now before the district court. Because the original plaintiffs amended their complaint once as of right while acting on behalf of the Society, allowance of further amendment lies in the discretion of the district court, Fed.R.Civ.P. 15; *see Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d

**10.** Significantly, the court reached this latter conclusion notwithstanding its practice of hearing appeals from all denials of motions to intervene of right. 606 F.2d at 357; *see supra* note 9.

**11.** Intervenors attempt to distinguish *Parklane Hosiery* by treating the district court's order in that case as a complete grant of intervention, a characterization that we do not accept. We also reject as both incorrect and irrelevant the representation made by counsel for intervenors at oral argument that *Parklane Hosiery* involved permissive intervention under Rule 24(b).

**12.** That the individual intervenors have also intervened does not affect our conclusion that the district court's order essentially allowed the Society entry into the lawsuit which it had financed. Intervenors dispute that the individual intervenors should be viewed simply as

figureheads for the Society. In particular, intervenors assert that because the individual intervenors were not party to the action prior to the motion to intervene, and because they seek to represent classes of all physicians similarly situated, they should be viewed as new parties to whom the Society's previous actions in this litigation should not be attributed.

It is evident, however, that the individual plaintiffs, both members of the Society, appear in this action solely because the Society has requested them to appear, and only because the original plaintiffs are no longer willing to follow the Society's instructions. Moreover, their status as putative class representatives reflects the Society's studied tactical decision to reinject class claims into the litigation at this stage. Indeed, were the individual plaintiffs not acting at the Society's behest, they might not have been allowed to intervene.

77 (1971). And denial of a request to amend a complaint is not usually appealable as an interlocutory matter. 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3914, at 538 (1976). Were we to take jurisdiction of the appeal on the ground that the district court order denied intervenors the complete intervention which is their due, we would in effect afford intervenors interlocutory appellate review that would not have been available had the dispute not developed between original plaintiffs and intervenors. The Society should not be allowed so to take advantage of the rift that has developed.[13]

We therefore hold that the district court's order allowing intervention without leave to file an amended complaint is not appealable as the denial of intervention.

### B.

Intervenors' second argument urges jurisdiction because the district court's order had the effect of denying injunctive relief. For an order of the district court to be appealable on an interlocutory basis under 28 U.S.C. § 1292(a)(1)[14] it is not necessary that the order by its terms refuse an injunction. Rather, orders that have the "practical effect" of denying an injunction will sometimes be appealable under section 1292(a)(1). *Carson v. American Brands, Inc.*, 450 U.S. 79, 83–84, 101 S.Ct. 993, 996–997, 67 L.Ed.2d 59 (1981). The availability of interlocutory review on that basis is, however, strictly limited.

For an interlocutory order to be immediately appealable under § 1292(a)(1) . . . a litigant must show more than that the order has the practical effect of refusing an injunction. Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger*, [348 U.S.] at 181, 75 S.Ct. at 252. *Unless a litigant can show that an interlocutory order of the district court might have "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.*

*Id.* at 84, 101 S.Ct. at 997 (emphasis added). As the *Carson* decision indicates, it is not enough for section 1292(a)(1) review that a party seeks to appeal an order having the effect of denying injunctive relief. In addition, *Carson* requires the party to establish that he would be entitled to *preliminary* injunctive relief, that is, the existence of a bona fide threat of irreparable injury pendente lite. *Id.* at 85, 101 S.Ct. at 997.[15] The intervenors must therefore

---

**13.** Intervenors attempt to overcome the force of the characterization of their complaint in intervention as the functional equivalent of an amended complaint by arguing that to the extent that it is accurate, it is applicable only to the Society, and not to the individuals who should be allowed at this juncture to raise any related claims. Regardless of whether the individual plaintiffs should be viewed only as additional stand-ins for the Society, *see supra* note 12, our reliance on *Parklane Hosiery* leads us to conclude that we do not have jurisdiction of the order even to the extent that it applies to the individual intervenors. For they, too, can appeal the district court's order upon final decision of the district court.

**14.** In general, appeal may be taken to this court only from "final decisions" of the district court.

28 U.S.C. § 1291 (1976). The policy against piecemeal appeals has been longstanding, *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 178, 75 S.Ct. 249, 250, 99 L.Ed. 233 (1955), and Congress has authorized interlocutory appeals only in narrowly-defined circumstances. One such exception to the finality requirement is 28 U.S.C. § 1292(a)(1) which permits appeals from "interlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, except where a direct review may be had by the Supreme Court."

**15.** Intervenors' reliance on *Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969), and *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822 (2d Cir. 1963), *cert. denied*, 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964), is therefore unavailing. To the extent that the

also establish that unless allowed an immediate appeal they "will lose their opportunity to 'effectually challenge' an interlocutory order that denies them injunctive relief and that plainly has 'serious, perhaps irreparable consequence.' " *Id.* at 86, 101 S.Ct. at .997.[16]

■ Although intervenors seem to satisfy the first prong under *Carson*, because the district court's order appears to have had the effect of denying injunctive relief,[17] they do not lose their ability fully to protect themselves if denied immediate appellate review. Notwithstanding intervenors' assertion that the district court's order "threatens permanently to deprive [intervenors] of any opportunity to litigate the excluded issues or ever obtain the broad injunctive relief they seek," having been made full parties to the action, they can later appeal from the district court's order upon the entry of a final order. And unlike the appellants in *Carson*, intervenors have not been irreparably harmed by being made to appeal at a later stage in the proceedings. Intervenors have not irretrievably lost an important tactical litigation advantage. Nor do they represent, for example, that unless immediate relief is obtained from Blue Shield's compensation practices

doctors will be forced to stop practicing medicine in Massachusetts or that others will be denied entry into the profession.

In an attempt to establish the kind of immediate, irreparable injury necessary for us to take jurisdiction of this appeal under section 1292(a)(1), the intervenors do raise one claim of injury that must be addressed. Because the Society has financed the instant litigation, both the Society and its members who supported the litigation may be bound by the rule of res judicata as though they were a party. *See General Foods Corp. v. Massachusetts Department of Public Health*, 648 F.2d 784 (1st Cir. 1981).[18] Intervenors argue that the ability of the Society and its members to seek injunctive and class relief in another action may be foreclosed by the instant action. The injury they allege is thus the risk that consideration of the additional claims in their complaint in intervention will be foreclosed, a risk that they maintain has materialized in the *Rodkey* action, *see supra* note 2, in which intervenors filed their proposed complaint in an attempt to preserve their right to raise the additional claims.

■ Although it is possible that intervenors' additional claims will merge with

decisions suggest that an order denying injunctive relief is appealable even though the injunction can be granted at a later time without prejudice other than that inherent in any postponement of relief, *Spangler*, 325 F.2d at 1248, and that it is enough to establish our jurisdiction that an order has the effect of denying injunctive relief, without inquiry into the existence of a threat of irreparable harm, *see Stewart-Warner*, 325 F.2d at 826, they have been overruled by *Carson*.

**16.** In *Carson*, the district court had refused to approve a settlement and enter a proposed consent decree aimed at eliminating alleged racially discriminatory employment practices violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Supreme Court reversed a decision of the court of appeals refusing to hear the appeal for lack of jurisdiction. The Court held that withholding entry of the consent decree had the effect of denying injunctive relief in a manner that risked irreparably harming the plaintiffs. It identified two potential sources of irreparable injury that supported appellate jurisdiction under 28 U.S.C. § 1292(a)(1). First, the plaintiffs risked losing their opportunity to settle the case, since avoid-

ance of a lengthy and costly trial was a factor in encouraging the defendant to settle. 450 U.S. at 86–88, 101 S.Ct. at 997–998. Second, the court noted that any delay in implementing the terms of the consent decree threatened direct harm to the beneficiaries of the settlement, *id.* at 88–89, 101 S.Ct. at 998–999, by denying them, for example, "specific job opportunities and the training and competitive advantages that would come with those opportunities." *Id.* at 89 n.16, 101 S.Ct. at 999 n.16.

**17.** The scope of the injunctive relief sought by intervenors is disputed. *See supra* note 7. Without deciding the question, we accept for argument's sake intervenors' contention that they seek broader injunctive relief than do the original plaintiffs.

**18.** In *General Foods*, this court held that a person who is not a party to an action but who expressly or impliedly gives a party authority to represent him, for example by contributing towards litigation expenses, may be bound by the rule of res judicata as though he were a party.'

those raised by the original plaintiffs, that threat does not justify preliminary injunctive relief and, concomitantly, interlocutory appellate review. Having failed to convince the district court to allow them to inject their additional claims, intervenors are not precluded from appealing the adverse determination at the conclusion of this action. Thus, whether intervenors are entitled to raise additional claims for injunctive and class relief will be fully decided in this action. Intervenors should not be allowed to bootstrap a claim of "immediate, irreparable injury" by asserting that a rejection at this point in time of their additional claims in the instant action may prejudice their ability to go forward in *Rodkey* or any other action.[19]

A recent decision of this court confirms that in the circumstances of this case intervenors cannot now allege irreparable injury adequate to support jurisdiction under section 1292(a)(1). In *Plymouth County Nuclear Information Committee, Inc. v. Boston Edison Co.*, 655 F.2d 15 (1st Cir. 1981), the district court had granted a motion to strike that portion of the plaintiffs' complaint seeking injunctive relief. Although the district court's decision had had the effect of denying preliminary injunctive relief, this court concluded that the court was without jurisdiction to hear the appeal. It noted that the plaintiffs had first been denied preliminary injunctive relief over a year and a half before the entry of the district

court order striking their claim for an injunction.[20] The court concluded,

> Under the circumstances, we think plaintiffs are hard pressed to demonstrate that the instant order has any *immediate* consequences of a serious nature, or that they will suffer "irreparable harm" pending final disposition of the case in the district court. To be sure, the district court may have "finally" determined the "legal sufficiency" of plaintiffs' claims for injunctive relief. Even so, its order has the "practical effect" only of denying *permanent* injunctive relief, and as such may be "effectually challenged" on appeal from final judgment.

*Id.* at 18 (footnotes and citations omitted) (emphasis in original). *See also Shirey v. Bensalem Township*, 663 F.2d 472, 476–77 (3d Cir. 1981).

The case at bar has a procedural history similar to *Plymouth County* in certain key respects. This is not the first time that the Society through its nominees has been in court advancing claims on behalf of Massachusetts physicians for injunctive relief against the defendants. Those efforts stretch back over a period of four years. Under the circumstances, intervenors, like the plaintiffs in *Plymouth County*, are hard pressed to demonstrate that the district court's order has any *immediate* consequences of a serious nature, or that they will suffer irreparable harm pending final disposition of the case in the district court.[21]

**19.** To the extent that intervenors also suggest that the presence of class-based claims independently supports our jurisdiction of the appeal, their suggestion must be rejected. The district court's order does not become appealable because relief is now sought on behalf of a class. *Gardner v. Westinghouse Corp.*, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978). Just as a denial of class certification is not rendered appealable because injunctive relief was sought on behalf of the class, *id.*, so the grant of a motion to intervene with limitations is not appealable simply because claims for injunctive relief on behalf of a class were raised.

**20.** Plaintiffs brought suit in Massachusetts Superior Court, seeking to enjoin Boston Edison Co. from operating its Pilgrim Unit I Nuclear Power Station. Shortly after the Superior

Court denied both a request by plaintiffs for preliminary injunctive relief and a motion to dismiss by defendant, the action was removed to the United States District Court. Plaintiffs failed to press their claim for preliminary injunctive relief in federal court for eighteen months, objecting only when the district court struck their prayer for injunctive relief from their complaint.

**21.** Defendants argue that because intervenors failed to seek *preliminary* injunctive relief they are perforce barred from § 1292(a)(1) review. Although we conclude that interlocutory review is indeed unavailable, we cannot accept so rigid an approach. A party's failure to seek preliminary injunctive relief is simply "a good indication that the status quo can continue until the ultimate conclusion of the litigation with-

A second, related basis exists for holding that plaintiffs are not entitled to immediate review notwithstanding that the effect of the district court's order is to deny them injunctive relief. In *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), the Supreme Court carefully distinguished between

> an order denying an injunction on the merits and "one based on alleged abuse of a discretionary power over the scope of the action."
>
> "Where the order is of the former type, the danger of serious harm from the court's erroneous belief in the existence of a legal barrier to its entertaining a claim for an injunction has been thought to outweigh the general undesirability of interlocutory appeals. The very fact that the second type of order hinges on the trial court's discretion is itself an indication that such orders, relating primarily to convenience in litigation, carry a lesser threat of harm."

*Id.* at 481 n.7, 98 S.Ct. at 2453 n.7 (quoting with approval *Stewart-Warner Corp. v. Westinghouse Electric Corp.*, 325 F.2d 822, 829 (2d Cir. 1963) (Friendly, J., dissenting)). *See also General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932). *Cf. Switzerland Cheese Association v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966) (order denying summary judgment relates only to pretrial procedures, does not touch on merits of claim, is not "interlocutory" within meaning of section 1292(a)(1), and therefore is not appealable).

In the present case, the trial court's order falls squarely within the category of discretionary orders which control the scope of the action and therefore do not justify interlocutory review.[22] The district court did not hold on the merits that injunctive relief was inappropriate; it simply held that in-

tervenors could not inject injunctive claims into the action at this stage of the litigation. *Cf. Commodity Futures Trading Commission v. Preferred Capital Investment Co.*, 664 F.2d 1316, 1321 (5th Cir. 1982) (Fed.R.Civ.P. 37(b)(2)(C) dismissal not interlocutorily appealable because complaint sought injunctive relief against dismissed defendant).

### III.

We therefore hold that the district court's order is not appealable under either 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a)(1) and dismiss the appeal for lack of jurisdiction.

*So ordered.*

---

out interlocutory appellate review." *Shirey v. Bensalem Township, supra,* 663 F.2d at 476.

**22.** Indeed, in *Plymouth County Nuclear Information Comm., Inc. v. Boston Edison Co., supra,* this court refused to take jurisdiction of the appeal even though in that case the district

court had " 'finally' determined the 'legal sufficiency' of plaintiffs' claims for injunctive relief." 655 F.2d at 18. The argument against immediate review is thus even stronger in the case at bar.