[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13238
_____

D.C. Docket No. 3:16-cr-00096-RV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY J. ATKINS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 19, 2019)

Before TJOFLAT and PRYOR, Circuit Judges, and MURPHY,* District Judge.

MURPHY, District Judge:

_____

* Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

Anthony J. Atkins appeals following his conviction for conspiracy to commit bank fraud, false statements to a financial institution, bank fraud, and mail fraud affecting a financial institution. Atkins was the CEO and President of GulfSouth Bank ("GulfSouth"). At trial, the government presented evidence that Atkins led a scheme to prevent Midnight Properties—a company to which GulfSouth had loaned mortgage money for a condominium development—from defaulting on their loan.

The evidence demonstrated that: (1) Atkins recruited friends and family members ("the buyers") to take out loans that he promised would be 100% financed, non-recourse loans[1] with which to purchase the condominiums; (2) the buyers signed false and fraudulent loan documents, namely HUD-1s[2] and security agreements, in the course of Atkins's scheme; (3) Atkins fraudulently induced a separate bank, Gulf Coast Community Bank ("Gulf Coast"), to release its lien on Midnight Properties' condominiums to close the sales; and (4) that Atkins had an employee mail a false satisfaction of mortgage to the County Clerk of Henry

---

[1] Non-recourse loans mean the bank would never come after the buyers for repayment of the money—even in the event of default.

[2] A "HUD-1," also called a "HUD-1 Settlement Statement," is "a document that lists all charges and credits to the buyer and to the seller in a real estate settlement, or all the charges in a mortgage refinance." *What Is a HUD-1 Settlement Statement?*, Consumer Financial Protection Bureau, https://www.consumerfinance.gov/ask-cfpb/what-is-a-hud-1-settlement-statement-en-178/.

2

County, where one of the buyers owned property that he used as collateral for his mortgage loan—despite the fact that the buyer never paid anything to GulfSouth.

On appeal, Atkins argues that the government's evidence is insufficient to support the jury's verdict in four distinct ways: (1) it fails to demonstrate a causal connection between Atkins's false statements and GulfSouth's decision to make the loans in question; (2) it shows that the false statements were made after the loans were authorized, and a false statement cannot apply retroactively to influence a bank's decision; (3) it cannot sustain a conviction for bank fraud because a Florida judgment lien is not "property" within the meaning of the bank fraud statute; and (4) it cannot sustain a conviction for mail fraud because the mailed false representations were not directed to the alleged intended victim of the fraud.

Sufficient evidence supports a criminal conviction if "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Barnes*, 694 F.2d 233, 233 (11th Cir. 1982) (quoting *United States v. Bell*, 687 F.2d 547, 549 (5th Cir. 1982)). We view the evidence and inferences drawn from it in the light most favorable to the government. *See id.* (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)). For ease of reference, we will address each argument in turn.

3

I.

A person commits bank fraud if he "knowingly executes, or attempts to execute, a scheme or artifice . . . to obtain any of the moneys, funds, credits, assets, securities, or other property . . . [of] a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. Any person who "conspires" to commit bank fraud is subject to the same penalties as one who commits bank fraud. 18 U.S.C. § 1349. Atkins argues that the government failed to present evidence establishing that his alleged falsehoods were the means by which he and his co-conspirators obtained GulfSouth's funds.

The "by means of" requirement in 18 U.S.C. § 1344 necessitates that the government prove a "relational component" of the crime. *Loughrin v. United States*, 573 U.S. 351, 362–63 (2014). The relationship between the falsehood and the acquisition of the financial institution's property must be "something more than oblique, indirect, and incidental." *Id.* at 363. For example, if a fraudster sold a knock-off designer handbag to an unsuspecting customer and then cashed the customer's valid check at a bank, the facts would not support a conviction under 18 U.S.C. § 1344 because the bank's involvement was merely incidental to the customer paying by check rather than cash. *Id.* at 364.

Here, the government introduced evidence that Atkins falsely promised non-recourse loans to individuals he solicited to purchase Midnight Properties'

4

condominiums, that he and his co-conspirators prepared false loan documents to make the buyers appear qualified, and that he made false representations to Gulf Coast to induce it to release its lien on the condominiums—all to execute his scheme to loan the buyers GulfSouth's money. Although Atkins—as President and CEO of GulfSouth—chose to disburse the loan money before the fraudulent paperwork was submitted to the bank, his fraudulent representations to the buyers, his and his co-conspirators' false representations in the loan documents, and his false representations to Gulf Coast were all integral to ensuring the success of the scheme to obtain the loans.

Atkins' case is not one in which "no false statement will ever go to a financial institution" and involvement of a financial institution at all is merely incidental to the scheme. *Id.* at 365. Rather, the government provided credible evidence that the scheme's aim was to obtain the bank's money through suspect loans. Taking the evidence in the light most favorable to the prosecution, a reasonable jury could have found that Atkins violated 18 U.S.C. §§ 1344, 1349. Accordingly, we affirm in this respect.

## II.

Atkins next argues that the government failed to introduce sufficient evidence to support his conviction for making, or aiding and abetting in the making of, false statements. False statements are criminally actionable when made

"knowingly . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation." 18 U.S.C. § 1014. Atkins claims that the government's evidence was insufficient to establish his guilt because: (1) the false HUD-1s and security agreements were submitted to GulfSouth after the loan money was disbursed; (2) the government failed to provide evidence that Atkins himself "made" any of the fraudulent HUD-1s or security agreements; and (3) if his conviction was based on an aiding and abetting theory, the government failed to provide sufficient evidence to demonstrate that the alleged principals (the buyers) had the requisite knowledge of the falsehoods for Atkins to be able to share a criminal purpose with them.

Atkins's first argument is unavailing because, under 18 U.S.C. § 1014, "[t]he question of intent is not whether the banks actually relied [on] or were influenced by the false statements, but rather, if the statement was capable of influencing." *United States v. Scott*, 701 F.2d 1340, 1345 (11th Cir. 1983). Regardless of whether the timing of the fraudulent HUD-1s and security agreements prevented the documents from actually influencing GulfSouth, the documents were certainly capable of influencing a bank's loan-making decision. Taking all evidence and inferences in the light most favorable to the government, a reasonable jury could have found the element satisfied by the evidence admitted.

6

Turning to Atkins's second and third arguments, the government also introduced evidence that Sam Cobb, GulfSouth's Vice President and Loan Officer, drafted the fraudulent loan paperwork at Atkins's direction. A reasonable jury could therefore conclude that Atkins at least aided and abetted the making of false statements to GulfSouth by directing the drafting of the fraudulent loan paperwork. Regardless of whether the government presented evidence that Atkins made any false statements himself or whether the buyers knew the paperwork they signed was fraudulent, the government presented sufficient evidence to support Atkins's conviction for false statements on a theory of aiding and abetting Sam Cobb. We therefore affirm in this respect.

### III.

Atkins further argues that his conviction for bank fraud must be reversed because the allegations against him were insufficient as a matter of law. Atkins maintains that, to sustain a conviction under 18 U.S.C. § 1344, the government must prove that the defendant defrauded a financial institution of "property," and that a judgment lien does not qualify as property.

We have made clear, however, that the bank fraud statute covers intangible *property*, even though it does not cover intangible *rights*. *See United States v. Shotts*, 145 F.3d 1289, 1292 (11th Cir. 1998) (citing *McNally v. United States*, 483 U.S. 350, 360 (1987) and *Carpenter v. United States*, 484 U.S. 19, 26–27 (1987)).

Federal courts look to the law of the state in which the alleged fraud occurred to define the scope of "property" under 18 U.S.C. § 1344. *See id.* at 1294–95. Here, Florida provides the applicable law, and it states that a judgment lien "is itself a species of intangible property . . . ." *See Smith v. Pattishall*, 176 So. 568, 574 (Fla. 1937) (citing *Seaboard All-Florida Ry. v. Levitt*, 141 So. 886, 889 (1932)). The government's evidence that Atkins defrauded Gulf Coast of a judgment lien was therefore sufficient to sustain his conviction for bank fraud. Accordingly, we affirm in this respect.

## IV.

Finally, Atkins argues that the government's evidence was insufficient to sustain his conviction for mail fraud as a matter of law because the government did not establish that the false statement mailed by Atkins's employee was directed to the same entity Atkins sought to defraud. Essentially, Atkins maintains that sending a false satisfaction of mortgage to the Henry County Clerk cannot constitute mail fraud intended to defraud GulfSouth. But Atkins is mistaken about the elements of mail fraud. The government's burden was to prove that Atkins: (1) "intentionally participate[d] in a scheme or artifice to defraud another of money or property" and (2) "use[d] . . . the mails . . . for the purpose of executing the scheme or artifice." *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007) (citation omitted). There is nothing in the plain language of 18 U.S.C. § 1341 or case law to

8

support an additional element that the mailed documents be directed to the scheme's victim.

The government presented evidence that Atkins used the mail to ensure that the false satisfaction of mortgage was recorded—a key step in executing his scheme to defraud GulfSouth. Nothing further was required. Accordingly, we affirm in this respect.

**AFFIRMED.**