In re Ulpiano UNANUE CASAL, Debtor.

Gerardo A. QUIROS LOPEZ, et al., Plaintiffs, Appellees,

v.

Ulpiano UNANUE CASAL, et al., Defendants, Appellees,

Liliane Unanue, Emperor Equities, Inc., Defendants, Appellants.

No. 92–2220.

United States Court of Appeals, First Circuit.

Heard March 2, 1993.

Decided July 7, 1993.

Andrés Guillenard–Noble, San Juan, PR, with whom Harvey B. Nachman and The Law Offices of Harvey B. Nachman, Santurce, PR, were on brief for defendants, appellants.

Arturo J. García–Solá, with whom Dora M. Penagarícano, McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz–Suria, Hato Rey, PR, were on brief for plaintiffs, appellees.

**30**

Carlos Lugo Fiol, Asst. Sol. Gen., Dept. of Justice, with whom Reina Colon De Rodríguez, Acting Sol. Gen., was on brief for intervenor.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Liliane Unanue ("Liliane") and Emperor Equities, Inc. ("Emperor") challenge the constitutionality of various provisional remedies imposed by a bankruptcy court pursuant to P.R.Laws Ann. tit. 32 App. III, R. 56 *et seq.* We lack jurisdiction over most of their claims, and find no merit in the others.

## I

### BACKGROUND

Ulpiano Unanue Casal ("Unanue"), a former chief executive officer of Goya Foods ("Goya"), filed a voluntary chapter 7 petition in August 1990, scheduling liabilities totaling $1.1 million and assets of nominal value. Goya, a creditor, charged that Unanue was continuing to lead a life of luxury, traveling between seven "fabulously furnished" apartments which he had fraudulently transferred to Liliane, his wife, prior to bankruptcy. After extensive discovery, Goya moved for leave to commence an adversary proceeding, in the name and behalf of the chapter 7 estate, *see* 11 U.S.C. § 503(b)(3)(B), against Liliane and Emperor, a shell corporation apparently controlled by Liliane. Although Liliane and Emperor were served with the Goya motion in July 1991, neither responded.

On August 24, 1991, Goya learned that Emperor had sold one of Unanue's former condominium apartments some months earlier, in May 1991, netting approximately $400,000. Goya promptly renewed its motion for leave to commence adversary proceedings on behalf of the chapter 7 estate, and sought an immediate *ex parte* order of attachment on the apartment-sale proceeds, alleging that the proceeds were assets of the chapter 7

estate and at risk of removal from the jurisdiction. On September 4, 1991, the bankruptcy court authorized Goya to commence an adversary proceeding, and issued an *ex parte* order of attachment under P.R. Rule 56 ("September 4 order").[1] On September 9, Goya provided appellants with copies of the summons, complaint, and motion for provisional remedies.

In the course of executing the writ of attachment, it was discovered that Liliane had transferred most of the apartment-sale proceeds to a Swiss bank account. On September 12, 1991, alarmed by the apparent removal of the sale proceeds from the jurisdiction, Goya sought additional provisional remedies under Rule 56, including "cautionary notices" and a "prohibition against alienation" of Liliane's remaining properties in Puerto Rico, Paris, New York and Spain. After notice to Liliane and Emperor, and a hearing on appellants' constitutional claims, the bankruptcy court authorized the additional provisional remedies on September 26 ("September 26 orders").

The September 4 and September 26 orders were appealed to the district court on the ground that the provisional remedies imposed by the bankruptcy court were unconstitutional under *Connecticut v. Doehr*, —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991). The Commonwealth of Puerto Rico intervened. *See* 28 U.S.C. § 2403(b). The district court upheld the challenged provisional remedies, *see In re Unanue Casal*, 144 B.R. 604 (D.P.R.1992), and the present appeal followed.

## II

### THE SEPTEMBER 4 ORDER

■ Although the parties have not done so, we inquire into our jurisdiction to entertain the interlocutory appeal of the *ex parte* order entered on September 4. *See In re Spillane*, 884 F.2d 642, 644 (1st Cir.1989); *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir.1988) ("a court has an obligation to

---

1. Federal Rule of Civil Procedure 64 is applicable in adversary proceedings. *See* Fed. R.Bankr.P. 7064. Thus, provisional remedies are available in an adversary proceeding, *see id.* 7001 & 7064, "under the circumstances and in the manner provided by the law of the state in which the district court is held," Fed.R.Civ.P. 64.

inquire *sua sponte* into its subject matter jurisdiction"). The courts of appeals may derive jurisdiction to review a district court appellate order in a bankruptcy case from either of two statutory sources: (1) the bankruptcy appeal provisions of 28 U.S.C. § 158(d); or (2) the interlocutory appeal provisions in 28 U.S.C. § 1292 applicable to civil actions generally. *See Connecticut Nat'l Bank v. Germain,* — U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).[2] We trace these avenues of appeal in turn.

## A. *Section 158(d)*

■ Section 158(d) affords a right of appeal to the courts of appeals from all *"final* decisions, judgments, orders [or] decrees" entered by district courts in bankruptcy cases. *See* 28 U.S.C. § 158(d) (emphasis added). It is often difficult to determine what constitutes a "final" judgment or order under section 158(d). There is somewhat less difficulty in doing so in an adversary proceeding, however, as the finality determination in such proceedings "closely resembles [that] in 'an ordinary case [between the parties] in a district court.'" *In re Harrington,* 992 F.2d 3, 6 n. 3, No. 92–2212 (1st Cir.1993) (quoting *In re Public Serv. Co.,* 898 F.2d 1, 2 (1st Cir.1990)). Accordingly, a district court order in an adversary proceeding is not appealable as of right under section 158(d) unless it ends the entire adversary proceeding "on the merits and leaves nothing for the court to do but enter the judgment." *See Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 375, 107 S.Ct. 1177, 1181, 94 L.Ed.2d 389 (1987) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

■ Even though a somewhat loosened standard of finality obtains in bankruptcy appeals, on a showing of "special justification," *see Harrington, supra,* at 6 n. 3, the exceptions are narrowly limited in order to avoid piecemeal review. Nevertheless, as in an ordinary civil action, the "collateral order" doctrine established in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct.

1221, 93 L.Ed. 1528 (1949), is applicable to an appeal from an interlocutory order entered in an adversary proceeding, *see In re Martin,* 817 F.2d 175, 178 (1st Cir.1987), where the non-final order is, *inter alia,* "effectively unreviewable on appeal from a final judgment," *see In re Newport Sav. & Loan Assn.,* 928 F.2d 472, 474 (1st Cir.1991) (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988)).

■ On this reasoning, we must decline review of the September 4 order, as "non-final" under section 158(d). We adhere to our earlier holding that an interlocutory order allowing an attachment to remain in place is not an appealable "collateral order," since " 'the rights of all parties can be adequately protected while the litigation on the main claim proceeds.'" *Lowell Fruit Co. v. Alexander's Market, Inc.,* 842 F.2d 567, 569 (1st Cir.1988) (per curiam) (quoting *Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.,* 339 U.S. 684, 689, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950)); the district court provided adequate protection of appellants' rights in the present case by conditioning its September 4 attachment order on Goya's posting of a $50,000 surety bond, and there is no indication that appellants' property is at further significant risk or peril. Moreover, the validity of the September 4 attachments remains subject to challenge on eventual appeal from a final judgment, even if the claimant prevails. *See Lowell Fruit,* 842 F.2d at 570 (citing *Drys Shipping Corp. v. Freights, Sub–Freights, Charter Hire,* 558 F.2d 1050, 1052 (2d Cir.1977)). In the meantime, appellants can secure release of the attached property by posting a surety bond of their own, *see* P.R. Rule 56.3, its cost presumably recoverable from the claimant in the event the defendant prevails on the underlying claim. *Cf. Lowell Fruit,* 842 F.2d at 570 (Massachusetts law). Given these procedural and remedial safeguards, the present case clearly falls within the rule in *Lowell Fruit:* " '[a]lthough the imposition of provisional remedies may impose a hardship—an unjust hardship if the imposition is improper—the hardship is

---

**2.** *Germain* rejected the widely held view that 28 U.S.C. § 158(d) affords the only avenue of appeal from a district court appellate order in a bankruptcy case. *Compare, e.g., In re GSF Corp.,* 938 F.2d 1467, 1473 n. 4 (1st Cir.1991).

not so substantial as to justify wasting judicial resources through piecemeal appeal.'" *Id.* at 569 (quoting *Trustees of HMG v. Compania Aseguradora Inter–Americana S.A. Panama,* 672 F.2d 250, 251 (1st Cir.1982) (per curiam)).

## B. *Section 1292*

■ We also lack jurisdiction over the September 4 order under 28 U.S.C. § 1292(a)(1), which permits interlocutory appeals of district court orders "granting, continuing, modifying, refusing or dissolving injunctions." Traditionally, section 1292(a)(1) has been construed narrowly, in light of its language and its potential for eroding the "finality" doctrine. *See, e.g., Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Kartell v. Blue Shield of Massachusetts, Inc.,* 687 F.2d 543, 551 (1st Cir.1982); *see also Sierra Club v. Marsh,* 907 F.2d 210, 214 (1st Cir. 1990) ("we are unwilling to adopt a more expansive reading of section 1292(a)(1) than is logically required"); *see generally* 16 Charles A. Wright *et al., Federal Practice and Procedure* (1977 & 1992 supp.) [hereinafter: *Wright & Miller*] at § 3921 n. 10. Thus, "[f]or historical reasons, court-ordered 'attachments,' even where coercive and designed to protect ultimate relief, are typically considered to be 'legal,' not 'equitable' in nature, and therefore are not 'injunctions' for § 1292(a)(1) purposes." *Bogosian v. Woloohojian Realty Corp.,* 923 F.2d 898, 901 (1st Cir.1991); *see also Wright & Miller* § 3922 n. 46. Moreover, where the challenged order is not expressly captioned as an injunction, *see Feinstein v. Space Ventures, Inc.,* 989 F.2d 49 (1st Cir.1993), "a litigant [must] show that an interlocutory order of the district court might have a 'serious, perhaps irreparable consequence,' and that the order can be 'effectually challenged' only by immediate appeal." *Carson,* 450 U.S. at 84, 101 S.Ct. at 998 (quoting *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)); *see also Kartell,* 687 F.2d at 551; *Bogosian,* 923 F.2d at 901 (noting "serious consequences" necessary for appealability).

In the present case, the September 4 order, captioned as an "attachment," possesses all essential characteristics of an "attachment" under Puerto Rico law: it is directed to the U.S. Marshal, rather than appellants, and its execution subjects the attached property to the jurisdiction of the court. We conclude that the September 4 order comes within the "attachments" exception to appealability under section 1292(a)(1). *See Bogosian,* 923 F.2d at 901. Moreover, even were we to treat the September 4 order as an "injunction" under section 1292(a)(1), appellants have not shown that the order is insusceptible of effective vindication following final judgment, *see Lowell Fruit,* 842 F.2d at 569–70, and therefore have not made the showing of "serious, perhaps irreparable consequences" required for interlocutory review. *See Carson, supra; see also Navarro–Ayala v. Hernandez–Colon,* 956 F.2d 348, 350 (1st Cir.1992) ("Even if we assume the dubious proposition that [the challenged] order ... could be considered an injunction, for an injunction to be immediately appealable it must have a 'serious, perhaps irreparable consequence'") (citation omitted); *Chronicle Pub. Co. v. Hantzis,* 902 F.2d 1028, 1031 (1st Cir.1990) ("[e]ven were the [challenged] order to be deemed an injunction under § 1292(a)(1), interlocutory review would be permissible only upon a showing that the order will have a 'serious, perhaps irreparable consequence,' and that the order can be 'effectually challenged' only by immediate appeal") (citation omitted).

## C. *Section 1292(b)*

■ Finally, appellants' challenge to the September 4 order presents no occasion for interlocutory review under 28 U.S.C. § 1292(b), which permits the courts of appeals to entertain an interlocutory appeal on a district court's certification "that [the challenged] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The district court did not purport to certify the September 4 order for immedi-

ate appeal,[3] and, in any case, a court of appeals may not exercise its discretion to entertain an interlocutory appeal under section 1292(b) unless the appellant requests it to do so within *ten days* after entry of the district court order from which appeal. is sought. No such timely request was made by appellants. "[T]he statute's ten-day limit is jurisdictional, which is to say that the law does not permit us to forgive a party's failure to comply." *Rodriguez v. Banco Central,* 917 F.2d 664, 668 (1st Cir.1990).

## III

### THE SEPTEMBER 26 ORDERS

■ The September 26 orders, authorizing the filing of "cautionary notices" against appellants' real properties, and prohibiting their alienation by appellants, present a somewhat closer question. On the one hand, the "cautionary notice," a creature of Puerto Rico law, is roughly analogous to the Anglo-American notice of *lis pendens, see Cruz La Corte v. Mojica Sandoz,* 109 D.P.R. 354 (1980); *see also Correa Sanchez v. Registrar,* 113 D.P.R. 581, 13 O.T. 750, 760 (1982) ("cautionary notice" is recorded in Registry of Property for primary purpose of subjecting property to the remedy obtained in a pending legal proceeding). Orders imposing *lis pendens* have been viewed as "attachments" for section 1292(a) purposes. *See Rosenfeldt v. Comprehensive Acctg. Serv. Corp.,* 514 F.2d 607, 609 n. 2 (7th Cir.1975) (Stevens, J.); *but cf. Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972) (per curiam) (holding *lis pendens* analogous to injunction under Florida law). On the other hand, a "prohibition against alienation" seems closely akin to an injunction; it is directed to appellants personally, enforceable by contempt, and " 'designed to accord or protect, some or all of the substantive relief sought' in the action." *Bogosian,* 923 F.2d at 901 (quoting 16 *Wright & Miller* § 3922 at 10, 26). The fact that the September 26 orders are not captioned as injunctions, and that the district court and the parties consistently treated them as attachments, is relevant but not dispositive of their appealability under section 1292(a)(1). *See Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Industries Fund,* 967 F.2d 688, 690 (1st Cir.1992) ("we consider the *substantial effect* of the order ... in deciding whether an appeal is available" under § 1292(a)(1)) (emphasis added); *cf. Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 47 (1st Cir.1986) (where an order has attributes of both an attachment and an injunction, treatment by district court and parties is "factor to be considered" for purposes of appealability). And it is at least conceivable, notwithstanding the $1 million surety bond posted by Goya, that appellants might be able to assert "serious, perhaps irreparable" consequences from the prohibition on alienation of properties having a stated value approximating $7 million.

■ We need not delve into the matter, however, as appellants' constitutional challenge to the September 26 orders would fail on the merits even if appealable under section 1292(a)(1). *See Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) (where party requesting dismissal based on lack of jurisdiction clearly would prevail on the merits, court may bypass close jurisdictional question). Appellants' constitutional challenge is based on *Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, which held that, absent exigent circumstances, "[a] plaintiff's interest in attaching ... property does not justify the burdening of [a defendant's] ownership rights without a hearing to

---

**3.** The district court opinion stated: "should the bankruptcy court's orders be deemed interlocutory, we *would have* granted leave to appeal these orders because of the important constitutional issues they raise." 144 B.R. at 608, n. 4 (emphasis added). The quoted statement appears in a footnote discussion of the *district court's* interlocutory appellate jurisdiction under 28 U.S.C. § 158(a). *See also* 28 U.S.C. § 157. In relevant part, § 158(a) states: "The district courts ... shall have jurisdiction ..., with leave of the [district] court, from interlocutory orders and decrees[ ] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Thus, in context, the district court's footnote did not purport to be a § 1292(b) certification, nor did it certify that "an immediate appeal [to the court of appeals] may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b).

**34**

determine the likelihood of recovery." *Id.* at ——, 111 S.Ct. at 2115. Here, however, appellants were given notice and a hearing prior to the issuance of the September 26 orders. At the hearing, Goya demonstrated a reasonable "likelihood of recovery," based on (1) the dates of appellants' purchase of the various properties; (2) sudden changes in the debtor's cash position around the times of these purchases; (3) appellants' repeated refusals to identify other sources of funding for their acquisition of these properties; (4) appellants' apparent attempt to remove assets from the jurisdiction at about the time Goya commenced its investigation into the debtor's connection with those assets; and (5) the debtor's apparent past involvement in appellants' financial affairs. Appellants, for their part, presented little or no rebuttal evidence, preferring to reserve their right to present their case at trial. *Doehr* does not require a trial on the merits prior to the issuance of a provisional remedy. Appellants were afforded due process before the September 26 orders issued. *See id.* We therefore reserve for another day the question whether a "cautionary notice," linked with a "prohibition against alienation" of real property, is appealable as an injunction under 28 U.S.C. § 1292(a)(1).

## IV

### CONCLUSION

The appeal of the September 4 order of attachment is dismissed for lack of jurisdiction, without prejudice to appellants' right to renew their constitutional challenge upon the conclusion of the pending adversary proceeding. The due process challenge to the September 26 orders imposing "cautionary notices" and a "prohibition against alienation" of appellants' properties is denied on the merits.

*Dismissed, in part, for lack of jurisdiction; affirmed, in part, on the merits. Costs to appellees and intervenor.*